**UNITED STATES of America,
Plaintiff-Appellant,**

v.

**Terry Wayne DENSON, Stephen Orlando
and Joseph James Janish,
Defendants-Appellees.**

**In re UNITED STATES of
America, Petitioner.**

**Nos. 78–2102, 78–2508.**

United States Court of Appeals,
Fifth Circuit.

Oct. 4, 1979.

Mary L. Sinderson, Asst. U. S. Atty., Houston, Tex., Brian K. Landsberg, Dept. of Justice, Dennis J. Dimsey, Appellate Sec., Drew S. Days, III, John E. Huerta, Civil Rights Div., Washington, D. C., for plaintiff-appellant.

Robert C. Bennett, Houston, Tex., for Denson.

Michael Ramsey, Houston, Tex., for Orlando.

Michael A. Andrews, Houston, Tex., for Janish.

E. W. Barnett, B. J. Bradshaw, Leroy Jeffers, Houston, Tex., Tom Mills, Jr., Dallas, Tex., for Nat'l Assn. of Criminal Defense Lawyers, Inc., amici curiae.

Before BROWN, Chief Judge, COLEMAN, GOLDBERG, AINSWORTH, GODBOLD, CLARK, RONEY, GEE, TJOFLAT,

HILL, FAY, RUBIN, VANCE, and KRAV-ITCH, Circuit Judges.*

ALVIN B. RUBIN, Circuit Judge:

A writ of mandamus is sought by the government to correct an allegedly illegal sentence for a criminal offense. The defendants were convicted on two counts, one of which prescribes "imprisonment for any term of years or for life." The trial judge imposed a ten year sentence on this count, suspended its execution and placed the defendants on probation. A panel of this court concluded that the trial court exceeded its authority in suspending execution of the sentence and placing the defendants on probation; that the government may not challenge the legality of the sentence by direct appeal; and that only mandamus could provide a remedy. A majority of the panel also decided, however, that, mandamus being an extraordinary writ, the court was not duty-bound to issue it. Finding no compelling need for the exercise of its discretion, the divided panel declined to issue the writ.[1]

■ En banc we differ only with panel's final decision not to issue the writ: we hold that, when the writ of mandamus is sought from an appellate court to confine a trial court to a lawful exercise of its prescribed authority, the court should issue the writ almost as a matter of course. In all other respects we affirm and reinstate the panel decision based on the authorities cited and the reasons set forth in its opinion, Parts I and II, Subparts A and B.

I.

The facts are fully and clearly set forth in the panel opinion. We recite them again merely to make this decision self-contained.

A four-count indictment charged that the three defendants, while members of the Houston, Texas, Police Department and acting under the color of Texas law, conspired to injure and intimidate Joe Luna Torres, Jr., and that the conspiracy resulted in his death, in violation of 18 U.S.C. § 241 (Count I); struck and assaulted Torres (Count II); pushed him into the bayou or aided and abetted that offense (Count III); all of which denied Torres his constitutional right not to be deprived of liberty without due process of law; and that they conspired to prevent another person from communicating information about these violations of federal law to an agent of the Federal Bureau of Investigation (Count IV). The defendants allegedly struck Torres while he was handcuffed, injuring him so badly that, when they arrived with their prisoner at the Houston city jail, the jailer refused to accept Torres because of his injuries, and, thereafter, in pursuance of the conspiracy, defendant Denson pushed Torres into a bayou where he drowned.

After a fifteen day trial, on February 8, 1978, the jury found all of the defendants guilty on Counts I and II and not guilty on the remaining counts. Forty-eight days later the court sentenced each defendant alike: on Count I, ten years imprisonment with execution of the sentence suspended; each defendant was placed on supervised probation for five years. On Count II the sentence was imprisonment for one year. The sentences were to be served consecutively.

■ There is no issue about the validity of the sentence on Count II. However, the government correctly contended, as the panel held, that under 18 U.S.C. § 3651 a defendant may be placed on probation only when he has been convicted of an offense *not* punishable by death or life imprison-

---

* Judges Johnson, Garza, Henderson, Reavley, Politz, Hatchett, Anderson and Randall did not participate in the consideration or decision in this case. The case was taken under submission by the court en banc on June 5, 1979.

1. 5th Cir. 1979, 588 F.2d 1112. Judge Goldberg, while concurring in the majority's conclusions on the illegality of the sentence, the nona-

vailability of appeal, and the propriety of seeking mandamus, dissented from the refusal to issue the writ, stating, "Our duty is only to issue the writ of mandamus where a statutorily illegal sentence was imposed. Such a sentence has been imposed here . . . ." 588 F.2d at 1133.

ment. Although the defendants were sentenced only to 10 years on Count I, 18 U.S.C. § 241 provides for a maximum sentence of life imprisonment for conspiracy to violate constitutional rights resulting in death. The district court, therefore, exceeded its authority in suspending execution of the sentence on Count I and in placing the defendants on probation.

## II.

Countless expressions can be found in the jurisprudence to support the black-letter proposition that mandamus is an extraordinary remedy for extraordinary causes. *See, e. g., Will v. United States,* 1967, 389 U.S. 90, 95, 88 S.Ct. 269, 273, 19 L.Ed.2d 305; *Platt v. Minnesota Mining & Mfg. Co.,* 1964, 376 U.S. 240, 245, 84 S.Ct. 769, 772, 11 L.Ed.2d 674; *Ex parte Fahey,* 1947, 332 U.S. 258, 260, 67 S.Ct. 1558, 1559, 91 L.Ed. 2041; *Sperry Rand Corp. v. Larson,* 8 Cir. 1977, 554 F.2d 868, 872; *Haneke v. Secretary of HEW,* 1976, 175 U.S.App.D.C. 329, 334, 535 F.2d 1291, 1296; *Aday v. United States District Court,* 6 Cir. 1963, 318 F.2d 588, 591, *cert. denied,* 375 U.S. 832, 84 S.Ct. 78, 11 L.Ed.2d 63. Indeed, we have ourselves echoed what appears to be almost an aphorism. *See, e. g., In re Estelle,* 5 Cir. 1975, 516 F.2d 480, 483, *cert. denied,* 1976, 426 U.S. 925, 96 S.Ct. 2637, 49 L.Ed.2d 380; *Carter v. Seamans,* 5 Cir. 1969, 411 F.2d 767, 773, *cert. denied,* 1970, 397 U.S. 941, 90 S.Ct. 953, 25 L.Ed.2d 121; *Belcher v. Grooms,* 5 Cir. 1968, 406 F.2d 14, 17; *Miller v. Connally,* 5 Cir. 1965, 354 F.2d 206, 208.

■ The writ of mandamus is an order directing a public official or public body to perform a duty exacted by law. It may be issued to compel compliance with a variety of legal duties by a host of officials and bodies. In this case the writ is sought from us as an appellate court for the purpose of confining a federal trial court to the exercise of its lawful authority. We agree with the panel that the correction of an illegal sentence is an extraordinary cause for which mandamus is available. However, examination of the authorities and careful consideration of the precise purpose for which the writ is here sought lead us to conclude that the panel assumed broader discretion than it actually had in deciding whether or not to issue the writ and that, whatever the ambit for judgment, the circumstances compelled issuance of the mandate.

■ The Supreme Court has repeatedly stated in general terms that issuance of a writ of mandamus lies in large part within the discretion of the court. *See, e. g., Helstoski v. Meanor,* 1979, —— U.S. ——, 99 S.Ct. 2445, 61 L.Ed.2d 30; *Kerr v. United States District Court,* 1976, 426 U.S. 394, 403, 96 S.Ct. 2119, 2124, 48 L.Ed.2d 725; *Schlagenhauf v. Holder,* 1964, 379 U.S. 104, 112 n.8, 85 S.Ct. 234, 239 n.8, 13 L.Ed.2d 152; *Roche v. Evaporated Milk Ass'n,* 1943, 319 U.S. 21, 25–26, 63 S.Ct. 938, 941, 87 L.Ed. 1185.

The scope of discretion is, however, circumscribed by the purpose for which the writ is sought. Under some circumstances the room for judgment is narrowly constrained. Fifty years ago in *Delaware, Lackawanna & Western Railroad v. Rellstab,* 1928, 276 U.S. 1, 48 S.Ct. 203, 72 L.Ed. 439, the Supreme Court was called upon to correct the action of a district court in setting aside a judgment in a civil action after the court's term had ended. The court of appeals had refused to grant a writ of mandamus requiring the district court to reinstate the judgment. The Supreme Court held that the power of the district court to set aside its judgment ended with the term. It stated:

As the Court was without jurisdiction to vacate the judgment, mandamus is the appropriate remedy . . . . .

\* \* \* \* \* \*

But it is said that the granting of the writ of mandamus is discretionary and it is implied that if we are of opinion that the Circuit Court of Appeals was mistaken in denying its power to grant the writ, that court still might deny it on the ground that injustice would be done if the judgment were allowed to stand. But neither Court would be warranted in

declaring the judgment unjust after it had become unassailable . . . . [276 U.S. at 5, 48 S.Ct. at 203–04.]

The Court held that, "because the District Court had made an unwarranted attempt to set aside a judgment that it had no jurisdiction to touch," "[i]t follows that the writ should issue." 276 U.S. at 5, 48 S.Ct. at 204. Discretion might be inherent in the writ, but the circumstances made appellate action imperative.

Three decades later, in *Beacon Theatres, Inc. v. Westover,* 1959, 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988, the writ was issued, without discussion of discretion, to protect a litigant's right to a jury trial. Mr. Justice Stewart, dissenting, together with Justices Harlan and Whittaker, thought that issuance of the writ was improper under the circumstances of the case, but agreed with what they considered the majority to hold: "There can be no doubt that a litigant is *entitled* to a writ of mandamus to protect a clear constitutional or *statutory* right to a jury trial." (Emphasis added.) 359 U.S. at 511, 79 S.Ct. at 957.

In many similar instances the writ has been issued to exact a trial court's performance of its duty with little or no discussion of discretion or judgment or balancing of factors. *E. g., In re Simons,* 1918, 247 U.S. 231, 38 S.Ct. 497, 62 L.Ed. 1094; *Estate of Whitlock v. Commissioner,* 10 Cir. 1976, 547 F.2d 506, 510, stay denied, 1977, 429 U.S. 1069, 97 S.Ct. 803, 50 L.Ed.2d 787, *cert. denied,* 1977, 430 U.S. 916, 97 S.Ct. 1329, 51 L.Ed.2d 594; *Hartland v. Alaska Airlines,* 9 Cir. 1976, 544 F.2d 992, 1001–02; *In re Rodgers,* 4 Cir. 1976, 537 F.2d 1196; *Schmidt v. Fuller Brush Co.,* 8 Cir. 1975, 527 F.2d 532; *ACF Industries, Inc. v. Guinn,* 5 Cir. 1967, 384 F.2d 15, *cert. denied,* 1968, 390 U.S. 949, 88 S.Ct. 1039, 19 L.Ed.2d 1140; *United States v. Nebbia,* 2 Cir. 1966, 357 F.2d 303. In such cases the appellate court is not merely correcting an evident error; it is also performing its duty to supervise the actions of a lower. court. *See La Buy v. Howes Leather Co.,* 1957, 352 U.S. 249, 259–60, 77 S.Ct. 309, 315, 1 L.Ed.2d 290.

Absent the availability of mandamus, the limitation imposed by congress on the sentencing latitude accorded the trial court would go unheeded. The assumption of broad discretion by an appellate court in deciding whether or not to issue mandamus would be almost equivalent to granting the trial court the statutory authority denied it by congress. While relatively few cases have considered the problem in terms of principle, the Supreme Court and other appellate courts have responded to the application for the writ in such circumstances almost as if the applicant had a right to its issuance.

■ The imposition of a sentence that is illegal is a manifest transgression. That an appellate court has the duty, with minimal margin for judgment, to correct an illegal sentence has been evident since the decision in *Ex parte United States,* 1916, 242 U.S. 27, 37 S.Ct. 72, 61 L.Ed. 129; there mandamus issued to set aside an unauthorized order designed to suspend permanently execution of a sentence. This use of mandamus was expressly approved in *Will v. United States, supra,* as an example of a situation "where the court overreached its judicial power to deny the Government the rightful fruits of a valid conviction." 389 U.S. at 97–98, 88 S.Ct. at 275.

■ These cases indicate that, if a district court exceeds the scope of its judicial authority, the aggrieved party should be granted the writ almost as a matter of right.[2] Consequently petitions to correct

**2.** It is fundamental that in such cases a court will not issue a writ of mandamus unless no other remedy is available. The lack of a remedy by appeal or in some other fashion is, however, a prerequisite to its issuance, not a factor to be weighed in determining whether or not, once it is shown that there is no other remedy, the writ should be issued. Moreover, the writ will not issue to correct a duty that is to any degree debatable: the trial court must be act-ing beyond its jurisdiction or in a fashion about which discretion is denied it. *See, e. g., Kerr v. United States District Court,* 1976, 426 U.S. 394, 96 S.Ct. 2119, 48 L.Ed.2d 725; *Trinity Memorial Hospital of Cudahy, Inc. v. Associated Hospital Service, Inc.,* 7 Cir. 1977, 570 F.2d 660, 666 n.9; *Carter v. Seamans,* 5 Cir. 1969, 411 F.2d 767, 773, *cert. denied,* 1970, 397 U.S. 941, 90 S.Ct. 953, 25 L.Ed.2d 121.

illegal sentences by mandamus have routinely been granted. *United States v. Jackson*, 2 Cir. 1977, 550 F.2d 830; *United States v. Norton*, 5 Cir. 1976, 539 F.2d 1082, cert. denied, 1977, 429 U.S. 1103, 97 S.Ct. 1129, 51 L.Ed.2d 553; *United States v. United States District Court*, 9 Cir. 1975, 509 F.2d 1352, cert. denied, 421 U.S. 962, 95 S.Ct. 1949, 44 L.Ed.2d 448; *United States v. Regan*, 8 Cir. 1974, 503 F.2d 234, cert. denied, 1975, 420 U.S. 1006, 95 S.Ct. 1449, 43 L.Ed.2d 764; *United States v. Mehrtens*, 5 Cir. 1974, 494 F.2d 1172, cert. denied, 419 U.S. 900, 95 S.Ct. 182, 42 L.Ed.2d 145; *United States v. McGarr*, 7 Cir. 1972, 461 F.2d 1; *United States v. Gibbs*, 9 Cir. 1960, 285 F.2d 225; *United States v. Lane*, 9 Cir. 1960, 284 F.2d 935. Indeed, in *United States v. Pregerson*, 9 Cir. 1971, 448 F.2d 404, 406, the Ninth Circuit explicitly stated that it had no alternative but to issue the writ of mandamus where a district court had rendered a sentence that was beyond the scope of its authority. As in each of these prior cases presenting a similar petition,[3] we here find no compelling justification for exercising such discretion as we have to deny the writ of mandamus.

### III.

■ Even were we not constrained by the narrow scope of discretion dictated by precedent, we would find no cause to deny the writ. Those "compelling" reasons suggested by the panel majority fail to persuade a majority of the court en banc. The panel first notes that the Government cannot appeal from these sentences, and should not be allowed to use mandamus as a substitute for appeal. As pointed out by Judge Goldberg in dissent, 588 F.2d at 1133 n. 1, the fact that the Government cannot obtain direct review of the sentence is not a justification for denying mandamus. Mandamus is available only when other remedies are lacking, and the writ has been issued

without question to correct an illegal sentence.

The proposition that resentencing "would be somewhat antithetical to the notions of finality inherent" in the double jeopardy clause, 588 F.2d at 1129, is not tenable. Federal courts have uniformly held that resentencing to correct an illegal sentence does not implicate double jeopardy rights. *E. g.*, *Bozza v. United States*, 1947, 330 U.S. 160, 166–67, 67 S.Ct. 645, 648–49, 91 L.Ed. 818; *Llerena v. United States*, 5 Cir. 1975, 508 F.2d 78; *Caille v. United States*, 5 Cir. 1973, 487 F.2d 614, 615; *United States v. Thomas*, E.D.N.Y.1972, 356 F.Supp. 173, 174, aff'd, 2 Cir. 1973, 474 F.2d 1336.

[11, 12] While the sentencing judge has great discretion in imposing a sentence, that latitude is permissible only within the bounds set by statute. When, as here, he goes beyond those limits, he has exceeded the utmost reach of discretion, and it becomes our duty not to set the sentence but to order him to remain within the perimeter fixed by the legislature.

We do not perceive that granting the petition would work a substantially greater hardship on the defendants than would have been exacted by a lawful sentence imposed initially. The mere fact that the defendants have psychologically prepared themselves for a total of one year's incarceration and may, as a result of our action, have their expectations frustrated does not compel a different result. The trial judge may take into account any difficulties caused by resentencing when he imposes a new and legal sentence just as he may consider any other appropriate factors whether they militate toward lenity or severity.

■ Concern about the possibility that upon resentencing the district court "could simply sentence these Defendants to one

---

**3.** In the only cases we have found in which a writ was denied to correct an allegedly illegal sentence, the court refused to entertain the petition because of the government's laches, expressly refraining from deciding whether the challenged sentences were within the trial court's power to assess. *United States v. Olds*, 3 Cir. 1970, 426 F.2d 562; *United States v. Carter*, 9 Cir. 1959, 270 F.2d 521.

year's imprisonment on Count One to run concurrently with a one year's sentence on Count Two," thus rendering issuance of a writ "a futile gesture," 588 F.2d at 1131, is in our opinion improper. Federal appellate courts lack the power either to impose or to review sentences. *See, e. g., United States v. Read*, 9 Cir. 1976, 534 F.2d 858, 859; *Zaffarano v. Blackwell*, 5 Cir. 1967, 383 F.2d 719, 721; *United States v. Martell*, 4 Cir. 1964, 335 F.2d 764, 767–68; *Jones v. United States*, 1963, 117 U.S.App.D.C. 169, 171–72, 327 F.2d 867, 869–70; *United States v. Rosenberg*, 2 Cir. 1952, 195 F.2d 583, 604–07, *cert. denied*, 344 U.S. 838, 73 S.Ct. 20, 97 L.Ed. 652. *See generally* ABA Project on Minimum Standards for Criminal Justice, Standards Relating to Appellate Review of Sentences (Approved Draft, 1968).

In vacating the illegal sentences, we cannot command any specific corrective. It is not futile to direct that a court act in accordance with law when the objective is neither a more nor a less severe sentence but merely one that complies with the appropriate statute. It is not the result we command but proper process. Speculation about what a federal judge who by statute is granted the sole power to impose a sentence will do in pursuance of his constitutional duty—and in accordance with the same oath we have ourselves taken—is inappropriate, for it would not only involve conjecture but it would threaten arrogation of the very sentencing review authority that Congress has denied federal appellate courts. The district judge will, we are confident, perform his duty. It is unseemly for us either to assume that he will take a particular course or to suggest what he

should do so long as he reaches his decision in accordance with the controlling statute.

The clerk shall issue a writ of mandamus vacating the sentences imposed and commanding the district court to resentence the defendants in accordance with law on their convictions of the charges in Count I of the indictment.

APPEAL DISMISSED; WRIT OF MANDAMUS TO ISSUE.

GOLDBERG, Circuit Judge, with whom BROWN, Chief Judge, GODBOLD and KRAVITCH, Circuit Judges, join, concurring in part and dissenting in part:

I agree with the majority's decision that a writ of mandamus should be issued here.[1] But I believe that it is fairer and more decorous for us to direct that a different district judge, other than the one who imposed these illegal sentences, resentence the defendants. It is true that the government, despite ample opportunity, never asked us to direct that resentencing be done by a different judge. But resentencing by a different judge is not part of the "relief" we grant to a party in this case; it is not something we should do because we want to aid the government's case or, for that matter, the defendants' case. We should do it because the fairness and integrity of the sentencing process require it. The government has petitioned for our writ of mandamus, and we are entitled to grant that writ in the form that will best promote the interests of the judicial system. For these reasons I must, in part, dissent.

"It is difficult for a judge"—*any* judge—"having made up his mind, to resentence a

---

1. I appreciate the majority's careful efforts to decide the case narrowly by holding, as I read its opinion that if we have any discretion at all to decline to issue the writ, we have very little; and that we need not decide whether we have that small amount of discretion, since there is no sufficient reason to exercise it. But as I said in my dissent from the panel's decision, I think it is our duty to issue a writ of mandamus in a case like this. *United States v. Denson*, 588 F.2d 1112, 1133 (5th Cir. 1979). Since mandamus is an equitable remedy, the usual equitable defenses are available. *See, e. g. United States v. Carter*, 270 F.2d 521 (9th Cir. 1959) (laches);

*Laycock v. Hidalgo County Water Control Dist. No. 12*, 142 F.2d 789, 791 (5th Cir.), *cert. denied*, 323 U.S. 731, 65 S.Ct. 68, 89 L.Ed. 587 (1944) (clean hands). And a court of equity has the power to shape its remedy to make it more just or effective, *see Ex parte United States*, 242 U.S. 27, 53–54, 37 S.Ct. 72, 61 L.Ed. 129 (1916); indeed I suggest that we shape our writ to require a different district judge to resentence the defendants. But although the question is one of degree, these equitable powers do not amount to a broad discretion to refuse to grant relief entirely.

defendant" when the initial sentence is overturned. *Mawson v. United States*, 463 F.2d 29, 31 (1st Cir. 1972). When the district judge in this case resentences the defendants, it will inevitably be difficult for him, as it would for any person, to ignore the opinion he previously embraced. If, on reconsidering, he again believes that a lenient sentence is appropriate, he will naturally—and conscientiously—fear that he is defying the spirit of our order, and of the civil rights and probation statutes which do not permit the sentence he originally imposed.[2] If, on the other hand, he is inclined to impose more severe sentences he will fear—again, naturally and conscientiously—that he is bending over backward, rejecting his prior view vigorously simply to avoid appearing unduly committed to it. It will be most difficult for him to take a fresh view of the problem.

But disciplining his own mind, and approaching the issue as if he had never passed judgment on it before, will be the least of the district judge's problems. A judge has a duty not just to be impartial but to appear impartial. When this case comes up for resentencing, we will already have done our share to create unfortunate appearances. We will have sent the government back before a judge who has already declared that one year's imprisonment is the appropriate sentence for these defendants, *see United States v. Denson*, 588 F.2d 1112, 1131 (5th Cir. 1979) (panel majority), and the government, if it requests a more severe sentence, will have to dissuade the judge from simply readopting a view he has previously taken. The defendants, meanwhile, will be before a judge whose leniency we have rejected. In this unwholesome situation, the district judge—even if this were an ordinary case—would have to be concerned not just with his own approach but with whether he appears to be either excessively committed to the views

he has already expressed or excessively eager to prove his impartiality by rejecting them. And, of course, this is no ordinary case. When he imposed the sentences, the district judge said he was attempting "to depoliticize what has become an almost intolerable situation of attempts to interfere with the independence of the Court." Having acknowledged that pressure, he will, as any judge would, want to avoid appearing to give in to it, an appearance he will create if he increases the defendants' sentences. But as I said, like any conscientious judge, he will also want to follow—and to appear to be following—both the spirit and the letter of our decision in this case. We are presenting the district judge with an intractable problem;[2a] it demands an impossible balancing act. No judge should be placed in such a predicament.

Of course, it is possible that this district judge can overcome all of these difficulties. He may be able both to be uninfluenced by the views he has already expressed and to appear to be uninfluenced. There is a chance that, through extraordinary efforts, he will be able to banish from his resentencing decision all the intense, conflicting pressures that inevitably result when a judge has already expressed a considered view about the proper sentence. But I see no reason for us to take this chance. Directing that a different judge resentence the defendants is the simple and obvious way to remove the danger. It is not improper or unseemly. It does not insult the original judge. Even if it were a novel measure, it would be appropriate, for nothing in this case calls for judicial restraint. There are no issues of federalism, no concerns about the separation of powers, no danger that we will be insufficiently deferential to the decisions of the elected branches of the government. The case is entirely within our domain. We are granting our writ, correcting

---

2. It was only recently—in 1968—that Congress increased the penalty for crimes like the defendants' to life imprisonment, thus making those convicted ineligible for probation. At the time, several members of Congress suggested that the increased penalties were needed to

deter violent breaches of the civil rights laws. *See, e. g.,* 114 Cong.Rec. 318 (1968) (remarks of Rep. Ryan); *id.* at 669 (Sen. Scott).

2a. Of course, we do not imply that the Judge is not free to recuse himself.

the illegal action of a district court under our supervisory jurisdiction. *See LaBuy v. Howes Leather Co.,* 352 U.S. 249, 259–60, 77 S.Ct. 309, 1 L.Ed.2d 290 (1957). Every issue on which we are divided concerns judge-made law about the scope of our discretion to grant and shape a remedy which Congress has given us wide authority to provide. This is an unusually appropriate case for us to be flexible and, if necessary, creative.

In fact, of course, resentencing by a different judge is not at all novel. Time and again the Supreme Court, our sister circuits, and we ourselves have ordered that a different judge resentence defendants whose original sentences were vacated. In most of these cases there is no indication that one party requested the case to be remanded to a different judge; rather, courts of appeals have ordered resentencing by a different judge in order to "preserve the appearance of justice," *United States v. Robin,* 553 F.2d 8, 10 (2d Cir. 1977), and to protect "the integrity and dignity of the judicial process." *United States v. CBS,* 497 F.2d 107, 109 (5th Cir. 1974). The most conspicuous example is *Santobello v. New York,* 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971). There the Supreme Court vacated a sentence because the prosecutor violated his plea bargain by making a recommendation to the judge; the Court held that the defendant was to be resentenced by a different judge. *Id.* at 263, 92 S.Ct. 495. Since judges are routinely expected to ignore improper arguments or inadmissible evidence, the Court must have been concerned primarily with the judge's inability to discard an opinion he had previously formed. The Supreme Court "emphasize[d] that this is in no sense to question the fairness of the sentencing judge." *Id.* at 263, 92 S.Ct. 495. We have followed *Santobello* many times. *See, e. g. United States v. Grandinetti,* 564 F.2d 723, 727 (5th Cir. 1977); *United States v. Vale,* 496 F.2d 365, 367 (5th Cir. 1976).

Broken plea bargains are not the only precedent, however. In *United States v. C. B. S.,* 497 F.2d 107 (5th Cir. 1974), we reversed a contempt conviction for violating the lower court's order banning courtroom sketches, and we remanded for retrial before a different judge from the one who had issued the order. We explicitly held that our supervisory power entitled us to remand to a different judge. We emphasized that we intended no insult to the original judge. We wrote:

> The trial judge in this case may well have had the unique ability to be an impartial judge in the circumstances, but regardless of that fact, such a trial does little to protect the judicial process from any possible suspicion of bias.

*Id.* at 109. This reasoning applies equally to the case before us.

Other circuits have been no less emphatic. In *Mawson v. United States,* 463 F.2d 29 (1st Cir. 1972), the defense attorney had had insufficient time to investigate and rebut statements in a presentence report upon which the sentencing judge relied. The First Circuit vacated the sentence and, noting that it intended no comment on the ability or partiality of the original judge, remanded to another judge for resentencing. Obviously, the pressures on the judge in that situation, and the danger of unfortunate appearances, are far less than in the case before us. Similarly, the Fourth Circuit ordered resentencing by a different judge after the original sentencing judge improperly considered the out of state residence of the defendants. *United States v. Diamond,* 561 F.2d 557 (4th Cir. 1977). The Ninth Circuit held that a different judge should resentence the defendant when the record showed that the original judge may have relied on an invalid prior conviction. *Leano v. United States,* 592 F.2d 557 (9th Cir. 1979). The Tenth Circuit, in a somewhat analogous case, ordered a new trial before a different judge after the original judge committed an error under "strain and emotional distress." *United States v. Bray,* 546 F.2d 851, 859 (10th Cir. 1976). The Tenth Circuit emphasized that it did not "challenge or question the integrity of the judge." *Id.* at 860. In the Seventh Circuit, a local rule provides that *any* case remanded for retrial shall be retried before a dif-

ferent judge. Local Rule 18. The Eastern District of New York has the same rule, Local Rule 2(d)(2), and the District of Connecticut has an official policy to the same effect. *See United States v. Robin,* 553 F.2d 8, 9 (2d Cir. 1977) (en banc). The Second Circuit has specified certain conditions under which a case would be sent back to a different judge. For example, "[w]here a judge has made detailed findings based on . . . factors erroneously considered, the circumstances sometimes are such that upon remand he or she either cannot reasonably be expected to erase the earlier impressions from his or her mind or may tend to lean over backwards or over-react in an effort to be fair and impartial." *Id.* at 10. More generally, the Second Circuit said, a case should be reassigned on remand if "reassignment is advisable to preserve the appearance of justice." *Id.* Personal bias, the court noted, was irrelevant, *id.* and remanding the case to a different judge "does not imply any personal criticism of the [original] judge". *Id.* Plainly there is nothing unusual about directing a different judge to do the resentencing.[3]

The majority's inflexibility about resentencing has, I believe, distorted our view of our role in this case in two important ways. First, it has distorted our view of the district court's sentencing discretion. The panel majority, in its opinion, engaged in what I thought was improper speculation about what the district judge might do on resentencing. *Compare* 588 F.2d at 1131 *with id.* at 1133. The en banc majority counsels, in my view correctly, that "[s]peculation about what a federal judge who by statute is granted the sole power to impose a sentence will do in pursuance of his constitutional duty . . . is inappropriate, for it would not only involve conjecture but it would threaten arrogation of the very sentencing review authority that Congress has denied federal appellate courts." *Ante,* 603 F.2d at 1149. But it is precisely the majority's disposition—allowing the same judge to resentence—that invites such speculation. It forces us to search our opinions for any passages that might appear to give the district judge 'hints about the sentence we want him to impose. The way to prevent this sort of speculation is, of course, to have a different judge resentence the defendants. More generally, resentencing by a different judge is the only way fully to protect the sentencing discretion of the district judge, by ensuring that that discretion will be free of the influence of past views, commitments, and controversies.

Finally, the majority seems to overlook the unique role we ourselves must play in this difficult and poignant case. We are dealing with the rights of criminal defendants, a subject with which I, like all my colleagues, am deeply concerned. But we are also dealing with lawless behavior by the police. The victims of ordinary crimes, however unhappy their plight, can at least look to the authorities for protection. When the authorities themselves break the law, as they did in this case, their victims have nowhere to turn—nowhere, that is, except to our courts. The proceedings in this case have raised doubts, in many minds, about whether the lives of all our citizens

---

3. The majority cites several cases in which a writ of mandamus was issued to correct an illegal sentence. *Ante,* 603 F.2d at 1147–1148. In all but three of these cases, the writ required only that the district judge vacate or otherwise nullify some order he had entered, such as an order suspending or reducing a sentence. There the district judge had only to carry out the task mandated; he did not have to exercise his discretion. Sending the case to a different judge would have been pointless.

In one of the other three cases, *United States v. Jackson,* 550 F.2d 830 (2d Cir. 1977), the court evidently viewed the district judge's error as a purely technical mistake. It even wrote a footnote, *id.* at 832 n. 5, suggesting ways in which the district judge, on resentencing, might legally achieve the same effects he attempted to reach with his illegal sentence. Obviously there was no need to direct a different judge to resentence. No one views the district judge's error in this case as a mere technicality; such a footnote here would be inconceivable. In the other two cases, *United States v. McGarr,* 461 F.2d 1 (7th Cir. 1972), and *United States v. Pregerson,* 448 F.2d 404 (9th Cir. 1971), the possibility of sending the case to a different judge was never canvassed; certainly it was not considered and rejected.

will be equally respected. However unwarranted those doubts are, we will not dispel them until we remove every suggestion of unfairness from the procedures we supervise. I would direct that a different judge resentence these defendants.

GEE, Circuit Judge:

I concur in Parts I and II and in the result.

JAMES C. HILL, Circuit Judge, with whom COLEMAN and AINSWORTH, Circuit Judges, join, specially concurring:

The En Banc majority differs "only with [the] panel's final decision not to issue the writ." Majority opinion, 603 F.2d at 1145. I burden the reader and these pages with this special concurrence for two purposes. First, I wish to reiterate my own continued conviction that the panel opinion is correct in Parts I. and II.[1] This purpose being accomplished in its statement, I write briefly to explain how I reconcile the panel opinion, which I authored, and the En Banc majority opinion, with which I concur.

The panel majority framed the analysis as follows:

> To conclude, as we have, that the District Court exceeded its authority under Section 3651 and that *mandamus* is the appropriate remedy does not end the matter. It must be remembered that we deal here with one of the extraordinary writs. We are not duty-bound to issue the writ. The procedural issue further narrows, therefore, to whether we shall exercise our discretion to grant the petition. This we decline to do.

588 F.2d at 1128. After listing the several factors which, taken together, were found compelling reasons not to issue the writ, the panel majority simply concluded: "Therefore, *we exercise our discretion* to deny the Government's petition for a writ of *mandamus.*" *Id.* at 1132. We made no effort at quantifying "our discretion." We merely exercised it.

Today, the *En Banc* seeks to quantify "our discretion." Couched in careful ambiguities, the *En Banc* majority opinion seeks to steer clear of the perceived Scylla and Charybdis of alternatives. The *En Banc* majority attempts to avoid either a holding that, under some circumstances, an appellate court has no discretion whatever and should issue the writ whenever the applicant is apparently entitled to it, or a holding that an appellate court has discretion and on these facts should have used its discretion to issue the writ. A middle course is proposed and adopted: when the writ is sought from a supervisory court to confine a trial court to its statutory jurisdiction, there is very little discretion. Thus, we embark on a seemingly endless, if not also aimless, voyage in an effort to define gradations in the amount of available discretion. This is indeed an historic journey, for in the Anglo-American history of the writ of *mandamus* this appears to be the maiden such voyage.

The language the *En Banc* majority uses to quantify and define the amount of discretion here shows how ill-charted are the waters which lie ahead:

> [W]e hold that, when the writ of mandamus is sought from an appellate court to confine a trial court to a lawful exercise of its prescribed authority, the court should issue the writ *almost* as a matter of course.

Majority opinion, 603 F.2d at 1145 (emphasis supplied). Somehow, the *En Banc* majority seems to confuse what are deemed compelling reasons for granting *mandamus* petitions in particular situations with the entirely separate notion of narrowing the scope of discretion to issue the writ. That there is little doubt how discretion should be exercised ought not be taken as a lessening of the quantity of discretion otherwise available. This confusing equivocation is a repeated theme in the majority opinion:

> The writ of mandamus is an order directing a public official or public body to

1.   Neither Judge Goldberg, in his panel dissent, nor the *En Banc* majority has taken issue with Parts I. and II.   *See United States v. Denson,*

588 F.2d 1112, 1133 (5th Cir.) (Goldberg, J., dissenting), *on rehearing en banc,* 603 F.2d 1143, 1149.

perform a duty exacted by law. It *may be issued* to compel compliance with a variety of legal duties by a host of officials and bodies. In this case the writ is sought from us as an appellate court for the purpose of confining a federal trial court to the exercise of its lawful authority. We agree with the panel that the correction of an illegal sentence is an extraordinary cause for which mandamus is available. However, examination of the authorities and careful consideration of the precise purpose for which the writ is here sought lead us to conclude that the *panel assumed broader discretion than it actually had* in deciding whether or not to issue the writ and that, *whatever the ambit for judgment,* the circumstances compelled issuance of the mandate.

The Supreme Court has repeatedly stated in general terms that issuance of a writ of mandamus lies *in large part* within the discretion of the court.

.     .     .     .     .

The scope of discretion is, however, circumscribed by the purpose for which the writ is sought. Under *some* circumstances the room for judgment is narrowly constrained.

.     .     .     .     .

Absent the availability of mandamus, the limitation imposed by congress on the sentencing latitude accorded the trial court would go unheeded. The assumption of broad discretion by an appellate court in deciding whether or not to issue mandamus would be *almost* equivalent to granting the trial court the statutory authority denied it by congress. While relatively few cases have considered the problem in terms of principle, the Supreme Court and other appellate courts have responded to the application for the writ in such circumstances *almost* as if the applicant had a right to its issuance.

The imposition of a sentence that is illegal is a manifest transgression. That an appellate court has the *duty, with*

*minimal margin for judgment,* to correct an illegal sentence has been evident since the decision in *Ex parte United States,* 1916, 242 U.S. 27, 37 S.Ct. 72, 61 L.Ed. 129.

.     .     .     .     .

These cases indicate that, if a district court exceeds the scope of its judicial authority, the aggrieved party should be granted the writ *almost* as a matter of right. .     .     . As in each of these prior cases presenting a similar petition, we here find no compelling justification for exercising *such discretion as we have* to deny the writ of mandamus.

Majority opinion *passim* (footnotes omitted).

The panel majority would have exercised, for the Court, its discretion to deny the petition. The *En Banc* majority, equivocation aside, exercises the Court's discretion to grant the writ. This I can and must accept.

My vote as a member of the hearing panel was a prediction of how our Court would exercise its discretion, and nothing more pretentious.[2] While for the reasons stated in the majority opinion I felt that the better exercise of discretion would have been against the extraordinary remedy in this case, 588 F.2d at 1128–32, I find it impossible to file a dissent here. The Court of Appeals for a particular Circuit is one court; it is not a collection of judges sitting individually or in threes as separate courts. When less than the full Court resolves issues, such resolution are *for the Court* and not *by a court.* How the Court exercises its discretion is the subject of a vote not a debate. The discretion should be exercised the way the majority of the Court votes. Exercises of discretion are not the same as questions of law. When only pure questions of law are presented, a disagreeing member of the Court may explain in dissent how the minority feels that the majority has incorrectly interpreted the law. Discretion is quite another matter. One who feels

---

2. "The prophecies of what the courts will do in fact, and nothing more pretentious, are what I mean by the law." O. W. Holmes, *The Path of the Law,* 10 *Harv.L.Rev.* 457, 461 (1897).

that the Court has discretion cannot dissent from its exercise.

When this petition was considered by the panel, the panel majority could only predict how the Court would exercise its discretion. Now Part II. of the *En Banc* majority opinion is not debatable. Subscribed to and concurred in by a majority of the active members of this Court, it holds, beyond peradventure, that the exercise of the Court's discretion is in favor of granting the writ. Although my prediction was incorrect, I am bound, now to concur.

