STATE of Wisconsin, Plaintiff-Respondent,

v.

Duane Lee MARTIN, Defendant-Appellant-Petitioner.

Supreme Court

*No. 83–1401–CR. Argued November 1, 1984.—Decided January 10, 1985.*

(Also reported in 360 N.W.2d 43.)

For the defendant-appellant-petitioner there were briefs and oral argument by *Mark Lukoff*, first assistant state public defender.

For the plaintiff-respondent the cause was argued by *Stephen W. Kleinmaier*, assistant attorney general, with whom on the brief was *Bronson C. La Follette*, attorney general.

SHIRLEY S. ABRAHAMSON, J.   This is a review of an unpublished decision of the court of appeals filed on March 29, 1984, affirming an order of the circuit court for Milwaukee county, Rudolph T. Randa, Circuit Judge.

The facts are undisputed.  Duane Lee Martin, the defendant, was convicted of armed robbery, party to a crime, in violation of secs. 943.32(1)(a) and (2) and

939.05, Stats. 1981–82, and was also convicted of second-degree felony murder, party to a crime, in violation of secs. 940.02(2) and 939.05, 1981–82. On the basis of these convictions, Milwaukee County Circuit Judge Ralph Adam Fine sentenced the defendant to two consecutive seventeen-year terms, one for the armed robbery and the other for the murder conviction, to be served concurrently with the four-year sentence defendant was then serving for a probation revocation.

The defendant moved to vacate the conviction and sentence for armed robbery, arguing that armed robbery was a lesser included crime of second-degree felony murder and that convictions and sentences for both crimes violated the defendant's constitutional protection against double jeopardy. The circuit court (Judge Randa) granted defendant's motion to vacate the conviction and sentence for armed robbery, consistent with *State v. Gordon,* 111 Wis. 2d 133, 330 N.W.2d 564 (1983). Over defendant's objection, the circuit court also vacated the sentence for second-degree murder. Relying on the record of the original sentencing proceeding and stating its intention to implement the original dispositional plan, the circuit court resentenced the defendant for the second-degree murder, increasing the penalty from 17 to 20 years (the statutory maximum), to be served consecutively to the four year sentence the defendant was serving for probation revocation. Thus while the murder penalty was increased, the overall effect was to reduce the total penalty from 34 to 24 years.

The court of appeals affirmed the order of the circuit court, and we affirm the decision of the court of appeals.

There are three issues on review: first, whether, upon vacating the defendant's conviction and sentence for a lesser included felony on double jeopardy grounds, the circuit court has authority to resentence the defendant for the greater offense, (here, second-degree felony

murder) after the defendant has commenced serving the sentence; second, whether the double jeopardy guarantee bars the circuit court from increasing the defendant's sentence for second-degree murder after the defendant has commenced serving the sentence; and third, whether the circuit court may increase the sentence relying only on the record of the initial sentence proceeding.

The three issues presented for review are questions of law, and this court need not give deference to the determinations of the circuit court or court of appeals.

We turn first to the power of the circuit court. Upon vacating the conviction and sentence for the lesser included offense (armed robbery), may the circuit court vacate the sentence for the greater offense (second-degree murder) and resentence the defendant when the defendant had commenced serving the sentence for the greater offense?

This court has recognized the inherent power of a trial court to change and modify its sentence. In *Hayes v. State,* 46 Wis. 2d 93, 99–106, 175 N.W.2d 625 (1970), overruled on other grounds, *State v. Taylor,* 60 Wis. 2d 506, 523, 210 N.W.2d 873 (1973), this court examined the common law rule that "a court has power to reconsider the judgment and sentence in a criminal case and to revise and correct it by modifying and even by increasing its severity if done during the term at which the judgment and sentence is pronounced and before the sentence has been executed or put into operation." *Id.* at 99–100, citing 16 Corp. Jur. 1314. In *Hayes* the court modified the common law rule so that a trial court could exercise "its inherent power to change and modify its judgments after the execution of the sentence ha[d] commenced and the term ended." *Id.* at 101. The *Hayes* court modified the common law rule because the court thought that "[w]ithin reasonable limits . . . an unjust

sentence should be corrected by the trial court. It is more important to be able to settle a matter right with a little uncertainty than to settle it wrong irrevocably." *Id.* at 105.

While *Hayes* affirmed the inherent power of the trial court to modify a sentence, it left open the question of what limitations are placed upon the trial court's inherent power by the federal and state constitutions, by the state statutes, and by considerations of sound sentencing discretion and the administration of the criminal justice system. Specifically the *Hayes* court noted that double jeopardy questions might be raised if the sentence was increased upon modification.[1]

Consequently, we turn to the second question presented, that is, whether the circuit court's increase of the defendant's sentence for second-degree felony murder violated the defendant's federal double jeopardy protections.[2] The fifth amendment instructs that no person "shall be subject for the same offense to be twice put in jeopardy of life or limb."

"Although the federal constitutional guarantee against double jeopardy has 'its roots in antiquity,' it is 'one of the least understood . . . provisions of the Bill of Rights' and the holdings of the United States Supreme Court can 'hardly be characterized as models of consistency and clarity.' " *State v. Bohacheff,* 114 Wis. 2d 402,

---

[1] *Hayes v. State,* 46 Wis. 2d 93, 101, 175 N.W.2d 625 (1970). A trial court is not free to modify a sentence solely on reconsideration and reflection and a deliberate change of mind. *See Scott v. State,* 64 Wis. 2d 54, 58–60, 218 N.W.2d 350 (1974).

[2] As will be evident in the remainder of the discussion, double jeopardy is potentially involved at two points in this case. First, the defendant successfully moved the trial court to vacate his conviction on armed robbery on double jeopardy grounds. Second, the double jeopardy clause is potentially implicated by the trial court's resentencing on the remaining conviction. Only the second aspect of double jeopardy is at issue in this case.

406, 338 N.W.2d 466 (1983), quoting *Whalen v. United States*, 445 U.S. 684, 699–700 (1980) (Rehnquist, J. dissenting). That the application of the double jeopardy clause "has not proved to be facile or routine is demonstrated by [the Court's] acknowledged changes in directions or in emphasis." *United States v. DiFrancesco*, 449 U.S. 117, 127 (1980).

The issue of double jeopardy arises in a number of contexts, *e.g.*, reprosecution after mistrial, multiple proceedings at the defendant's instigation, reprosecution after acquittal, reprosecution after conviction, and multiple punishments for the same offense, and involves several concepts that cannot be encompassed readily in a single formulation. In lieu of a single formulation, courts have described the various purposes of the clause: to protect the defendant from multiple trials and multiple punishments for the same offense; to preserve the finality of judgments; to protect the integrity of final judgments; to bar the government from a second chance to supply evidence which it failed to furnish in the first proceeding; and to protect the defendant's right to have the trial completed by a particular tribunal.

The rationale underlying the prohibition against double jeopardy has been described by the United States Supreme Court as follows:

"The constitutional prohibition against 'double jeopardy' was designed to protect an individual from being subjected to the hazards of trial and possible conviction more than once for an alleged offense . . . . The underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though inno-

cent he may be found guilty." *Green v. United States,*
355 U.S. 184, 187–88 (1957), quoted with approval in
*United States v. DiFrancesco,* 449 U.S. 117, 127–28
(1980).[3]

A corollary of this principle of fairness is that the de-
fendant once convicted and punished, should not live in
a state of anxiety and insecurity for fear of further
punishment for the same offense. The double jeopardy
clause assures finality and fairness in the administra-
tion of the criminal justice system. *United States v.
DiFrancesco,* 449 U.S. 117, 128–29 (1980).

The defendant contends that an increase in the sen-
tence for second-degree felony murder after the defend-
ant has begun to serve the sentence violates the prohi-
bition of double punishment inherent in the double
jeopardy clause.

[3] For a discussion of the double jeopardy clause, see *e.g., United
States v. DiFrancesco,* 449 U.S. 117, 126–31 (1980); Dunsky,
*The Constitutionality of Increasing Sentences on Appellate Re-
view,* 69 J. Cr. L. & Criminology 19 (1978); Spence, *The Federal
Criminal Code Reform Act of 1977 and Prosecutorial Appeal of
Sentences: Justice or Double Jeopardy,* 37 Md. L. Rev. 739 (1978);
Freeman and Earley, *United States v. DiFrancesco: Government
Appeal of Sentences,* 18 Am. Cr. L. Rev. 91 (1980); Westen, *The
Three Faces of Double Jeopardy: Reflections on Government Ap-
peals of Criminal Sentences,* 78 Mich. L. Rev. 1001 (1980); Recent
Developments, *Double Jeopardy and Prosecutorial Appeal of Sen-
tences: DiFrancesco, Bullington, and the Criminal Code Reform
Act of 1981,* 35 Vand. L. Rev. 709 (1982); Comment, *Government
Appeals of Sentence: Double Talk with the Double Jeopardy
Clause?* 9 Ohio N.U.L. Rev. 385 (1982); Note, *Resentencing on
Surviving Valid Counts after a Successful Appeal: A Double
Jeopardy and Due Process Analysis,* 69 Cornell L. Rev. 342 (1984);
Annot., *Power of State Court, During Same Term, To Increase
Severity of Lawful Sentence—Modern Status,* 26 ALR4th 905
(1983); Goldman, *Criminal Law,* The National L.J., Aug. 2, 1982,
p. 19.

This court and federal courts have frequently stated that the double jeopardy guarantee prevents a trial court from increasing a sentence after the defendant has commenced serving the sentence. *See, e.g., Chandler v. United States,* 468 F.2d 834 (5th Cir. 1972); *Scott v. State,* 64 Wis. 2d 54, 58, 218 N.W.2d 350 (1974). This rule is usually derived from *Ex parte Lange,* 18 Wall. 163, 85 U.S. 163 (1874), and *United States v. Benz,* 282 U.S. 304, 307 (1931). In *Lange,* the trial court imposed both a fine and imprisonment when the statute authorized only one or the other. The defendant paid the fine. The United States Supreme Court held that in modifying the sentence to impose imprisonment after the defendant paid the fine, the trial court had imposed double punishment. In *Benz* the only issue before the Court was the power of the Court to reduce the sentence. The Court's discussion of the unconstitutionality of increasing a sentence and its interpretation of *Lange* were dictum.

The *Lange-Benz* rule barring modification of a sentence after the commencement of the sentence was refined in *Bozza v. United States,* 330 U.S. 160 (1947), and in *North Carolina v. Pearce,* 395 U.S. 711 (1969). In *Bozza* the Court distinguished execution of valid sentences from execution of invalid sentences concluding that the court's correction of an invalid sentence by increasing the punishment did not constitute double jeopardy; the initial sentence being invalid, the second, more severe sentence was the only valid sentence imposed.[4]

---

[4] In *Bozza v. United States,* 330 U.S. 160 (1947), the trial court initially imposed only imprisonment while the statute mandated a sentence of fine and imprisonment. A short time later the trial court imposed the minimum mandatory penalties. The Supreme Court held that the trial court could resentence the offender without putting him twice in jeopardy because the trial court

In *Pearce* the Court concluded that the double jeopardy protections did not preclude a court, upon retrial, from imposing a more severe sentence than was imposed initially.

In *United States v. DiFrancesco*, 449 U.S. 117, 139 (1980), the Supreme Court undercut the *Lange-Benz* rule by confining the *dictum* in *Benz* to *Lange's* specific factual context. The statements in *DiFrancesco* interpreting *Lange* and *Benz* appear themselves to be *dicta*. The issue in *DiFrancesco* was not generally whether a sentence could be increased by a trial court after execution of the sentence but whether a specific federal statute authorizing the government to appeal seeking an increase in certain sentences could withstand a double jeopardy attack. The scope of the Court's holding in *DiFrancesco* remains uncertain. *United States v. Henry*, 709 F.2d 298, 309–310 (5th Cir. 1983).

This case does not require us to consider *DiFrancesco* inasmuch as we conclude that this case falls within the *Bozza* exception to the applicability of the double jeopardy clause to increased sentences: a trial court may increase the sentence if the initial sentence is illegal.

Although the defendant in this case characterizes the initial sentence for the second-degree felony murder as valid, this court treats the sentence for second-degree felony murder, when imposed along with a sentence for the underlying lesser included felony, as based on misinformation of constitutional magnitude and hence illegal.

A series of Wisconsin cases involving challenges to convictions under lesser included offenses and under

---

" 'only set aside what it had no authority to do and substitute[d] directions required by the law to be done upon the conviction of the offender.' " *Id.* at 167 (citation omitted). *See also United States v. Denson*, 603 F.2d 1143, 1148 (5th Cir. 1979) (en banc).

enhancement statutes implicitly demonstrates this court's view of the illegality of the sentence for the unchallenged conviction. In *Ronzani v. State,* 24 Wis. 2d 512, 129 N.W.2d 143 (1964), a case very similar to the case at bar, the defendant was convicted of third-degree murder (felony murder) and of the lesser included offense of attempted armed robbery. The trial court sentenced the defendant to 15 years for the murder and 10 for the underlying felony, the two sentences to run consecutively. On appeal, the state called to the court's attention the error of entering two separate sentences for a single crime, and this court set aside the conviction and sentence for the attempted armed robbery. While affirming the judgment of conviction for third-degree murder, the supreme court remanded the cause for resentencing on this count, explaining that it decided "to remand for resentencing because the original sentence of Ronzani for third-degree murder may reflect the trial court's erroneous conclusion that a consecutive sentence could also be given for the attempted armed robbery." 24 Wis. 2d at 520.

In *State v. Upchurch,* 101 Wis. 2d 329, 305 N.W.2d 57 (1981), we addressed the resentencing issue in a somewhat different context. The trial court in *Upchurch* sentenced the defendant to two consecutive terms, one under the habitual offender statute and the other under the statutes proscribing possession of a controlled substance with intent to deliver. The consecutive sentence under the habitual offender statute was improper because the repeater statute enhances a penalty for a crime committed by the repeat offender but does not give rise to an independent crime upon which a defendant may be separately sentenced. Recognizing its error, the trial court modified the sentences to impose one increased sentence for the drug charge. The defendant argued that the trial court could not increase the sentence validly

imposed for the drug charge. This court was unwilling to accept the defendant's argument that the sentence for the valid conviction was legal and should not be disturbed. Rather, we concluded that the initial sentence "was invalid as a multiple punishment for a single crime" and further stated that "[t]he defendant in this case received *two* separate and consecutive one-year sentences for the commission of *one* criminal act. It is clear that these multiple sentences violated the principles of double jeopardy." Finally we concluded that the punishment ordered "was legally impermissible and resentencing is required." *Id.* at 333–34, 336.[5]

*Robinson v. State,* 102 Wis. 2d 343, 306 N.W.2d 668 (1981), presented yet a different configuration of statutes. Robinson was convicted of, and sentenced for, two crimes: armed robbery in violation of sec. 943.32(2) and concealing identity during commission of the armed robbery in violation of sec. 946.62, Stats. This court concluded that concealing identity was not a separate crime. Thus, we vacated the judgment, conviction, and sentence, relating to concealing identity. While we affirmed the conviction of armed robbery, "under circumstances wherein the defendant was concealing his identity," we vacated the sentence for armed robbery, and remanded the matter to the circuit court with the instructions to resentence the defendant on the armed robbery conviction under circumstances where the armed robbery was

---

[5] At least two additional statements by the *Upchurch* court support the proposition that the original punishment was invalid in its entirety. The court specifically stated, "The consecutive *sentences* of January 23, 1980 were invalid," *State v. Upchurch,* 101 Wis. 2d 329, 335, 305 N.W.2d 57 (1981) (emphasis added), and "The defendant Upchurch originally received two consecutive sentences on the basis of a single conviction in violation of his right to be free from being twice placed in jeopardy of punishment for the same offense. This punishment was invalid. . . ." *Id.* at 336.

committed while his appearance was concealed by a wig in violation of sec. 946.62. In so doing, the *Robinson* court interpreted *Upchurch* as holding that "the imposition by the trial court of two separate consecutive sentences, one for the underlying crime and one for the repeater, violated double jeopardy because in reality two sentences were being imposed for the same crime," *id.* at 356, and applied the Upchurch rationale to the case then before the court. See also *State v. Morris,* 108 Wis. 2d 282, 322 N.W.2d 264 (1982).

Finally, in *State v. Gordon,* 111 Wis. 2d 133, 330 N.W.2d 564 (1983), the trial court convicted and sentenced the defendant on charges of kidnapping, burglary, robbery and second-degree murder. On review this court held that convictions for both second-degree murder (felony murder) and the lesser included offense of kidnapping violated the defendant's federal constitutional guarantee against double jeopardy. Relying on *Ronzani, Upchurch, Robinson,* and *Morris,* we vacated the conviction for kidnapping and vacated all sentences and remanded the cause for resentencing.

The *Ronzani-Gordon* line of cases demostrates that when a defendant is convicted of and sentenced for two offenses which are later held to be the same offense, and when one conviction and sentence is vacated on double jeopardy principles, the validity of both punishments is implicated, the sentences for both offenses are illegal, and resentencing on the valid conviction is permissible. Although these cases do not explicitly set forth the basis for distinguishing between legal increases of illegal sentences and illegal increases of valid but erroneous sentences, the reason for placing this case in the former category is clear from an analysis of the nature of the offender's challenge in each case and the principles of the double jeopardy guarantee.

In each case we have discussed, the defendant, not the state, has initiated the proceeding. The double jeopardy guarantee protects against the government attempting to gain an advantage on a second try. It does not preclude the offender from attacking a conviction or sentence and does not preclude retrial or resentencing if the conviction or sentence is vacated.[6] Nevertheless, the cases also allow that the defendant's constitutional and statutory rights to challenge a conviction or sentence should not be "chilled" by the threat of increased punishment. In the *Ronzani-Gordon* line of cases, as contrasted with cases involving a defendant's appeal of one of several independent convictions, there is little possibility of deterring the offenders from exercising their rights to challenge a conviction or sentence because any new sentence must be in accord with the initial dispositional plan for the particular conduct in question and thus cannot reflect vindictiveness on the part of the resentencing court.

The defendant asserts in this case that he has not challenged the sentence for second-degree felony murder and that the state has no statutory authority to seek modification of the sentence for that charge. We conclude that by attacking the armed robbery conviction on double jeopardy grounds, as the defendant did in this case, the

---

[6] The waiver doctrine has not been treated consistently by the United States Supreme Court. See, *e.g., Murphy v. Massachusetts,* 177 U.S. 155, 160 (1900) (if sentence set aside at defendant's instance, he cannot allege he had been in legal jeopardy by reason thereof); *Trono v. United States,* 199 U.S. 521 (1905) (waiver by appeal); *Green v. United States,* 355 U.S. 184, 192 (1957) (waiver doctrine repudiated); *North Carolina v. Pearce,* 395 U.S. 711, 721 (1969) (conviction set aside, "the slate has been wiped clean"); *United States v. Scott,* 437 U.S. 82, 99, reh'g denied, 439 U.S. 883 (1978) (double jeopardy clause does not relieve a defendant from the consequences of his voluntary choice).

defendant has, by the interdependent nature of the offenses involved, in reality attacked both sentences. The thrust of the defendant's challenge to one of the convictions and sentences is to demand a single valid conviction and punishment for one offense in lieu of two convictions and two sentences for what is in law one offense.

Here, as in each case described, the underlying premise of the offender's challenge appears to be that an increased sentence would be multiple punishment for the same offense. This position is not persuasive. In each case described, the offender would not be punished once for the totality of the offense unless there was a resentencing. In each case, the original sentencing judge, contrary to law, spread the sentence for the totality of conduct over what she or he thought were two offenses, but which were actually a single offense. The opportunity for resentencing permits the sentencing judge to reimpose, within statutory limits, the punishment she or he originally imposed considering the gravity of the conduct of which the offender was found guilty. In the present case, the defendant would not be legally punished once until the sentence for the single conviction of felony murder also took into account the armed robbery. As we shall discuss later, the opportunity for abuse inherent in a broad judicial power to increase initial sentences is not present in this case and in the *Ronzani-Gordon* line of cases.

In each of the cases described the offender's challenge to the increased sentence may also be based on the theory that an increased sentence is analagous to a reprosecution after a judgment of acquittal. Reprosecution after acquittal is barred by the double jeopardy clause.[7] The offender's argument therefore is that an

---

[7] An acquittal is accorded special weight under the double jeopardy clause; an acquitted defendant may not be retried even

original sentence encompasses an acquittal of the harsher sentence that might have been imposed and that an acquittal of the harsher sentence bars an increased sentence on a resentencing.

Whether or not the acquittal analogy is persuasive, and the United States Supreme Court did not find it persuasive in *DiFrancesco*, it is inapplicable in this case and in the *Ronzani-Gordon* line of cases. At the initial sentencing in these cases the offender was not acquitted of the harsher punishment but was sentenced to the harsher punishment by means of two sentences rather than one. On resentencing, the sentencing judge would reimpose an appropriate penalty for the entire conduct being punished—murder during the commission of armed robbery. Furthermore, the *Ronzani-Gordon* line of cases does not involve subjecting an offender to more years in prison on fewer counts without further evidence of additional crimes. In these cases the offender is being resentenced on the same "counts." The offender's challenge to one of the convictions is not based on the assertion that he is innocent of, or should be acquitted of, the challenged count, but on the implicit acceptance of guilt on that count and the assertion that the valid conviction for the greater offense encompasses the challenged conviction. On resentencing in these cases the offender is not being punished for a conviction which was invalidated because the offender was acquitted of the offense. Rather the invalidity charged offense is

though the acquittal was based upon an erroneous foundation. A conviction is treated differently: if the defendant has been convicted and the conviction is overturned, the double jeopardy guarantee does not limit the power of the state to retry the defendant unless the conviction was reversed because of insufficiency of evidence. The United States Supreme Court has not set forth a consistent rationale for allowing retrial following a successful challenge by the defendant. *See* note 6 *supra.*

merged by statute into a single offense for purposes of sentencing.

Adhering to the disposition and rationale of the cases discussed above, we hold that vacating the conviction and sentence of armed robbery on double jeopardy grounds in this case necessarily rendered the sentence for felony murder illegal and that the circuit court's resentencing for the felony murder charge in this case did not violate the double jeopardy guarantees.

The defendant relies on *State v. North,* 91 Wis. 2d 507, 283 N.W.2d 457 (Ct. App. 1979), to support his position that increasing the penalty for felony murder violates the double jeopardy protection. In *North,* the court of appeals concluded that the trial court could not increase the sentence for a felony conviction when it decreased the sentence for a misdemeanor charge. As the state correctly points out, however, *North* is distinguishable from the instant case, on the same ground that the *North* case was distinguished in *Upchurch,* 101 Wis. 2d at 333–34. In *North* the defendant had been given separate sentences for separate crimes. In *Upchurch* and in this case the defendant was given two sentences for the same crime. The felony murder sentence, as well as the armed robbery sentence, were invalid as multiple punishments for a single crime.

Having concluded that the circuit court has the inherent power to resentence on the remaining valid conviction and that, consistent with the double jeopardy clause, the resentencing may result in an increased penalty for the remaining conviction, we turn now to the third issue.

The defendant asserts that the circuit court's reliance on the record of the original sentencing proceeding raises a due process question, namely whether the circuit court may increase a sentence in the absence of new objective factors justifying a more severe sentence.

Prior Wisconsin cases hold that the new factor requirement is not applicable in a case such as this one involving a resentencing after an initial illegal sentence. The new factor rule was set forth in *State v. Leonard*, 39 Wis. 2d 461, 473, 159 N.W.2d 577 (1968). We concluded that "on resentencing following a second conviction after retrial, or mere resentencing, the trial court shall be barred from imposing an increased sentence unless (1) events occur or come to the sentencing court's attention subsequent to the first imposition of sentence which warrant an increased penalty; and (2) the court affirmatively states its grounds in the record for increasing the sentence." The *Leonard* rule is substantially similar to the rule set forth by the United States Supreme Court in *North Carolina v. Pearce*, 395 U.S. 711 (1969). The United States Supreme Court explained the due process considerations underlying the *Pearce-Leonard* rule as follows:

"Due process of law, then, requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial. And since the fear of such vindictiveness may unconstitutionally deter a defendant's exercise of the right to appeal or collaterally attack his first conviction, due process also requires that a defendant be freed of apprehension of such a retaliatory motivation on the part of the sentencing judge." *Id.* at 725.

The *Leonard* rule, which applies to resentencings after retrial or to mere resentencings, is broader than the *Pearce* rule, which applies only to resentencing after retrial. *Grobarchik v. State*, 102 Wis. 2d 461, 472, 307 N.W.2d 170 (1981). Nevertheless the purposes of the *Leonard* and *Pearce* due process rules are the same. First, they ensure that vindictiveness against the defendant will not be a factor in the resentencing process. Second, they relieve the apprehension of vindictiveness

which could deter the defendant from exercising the right to challenge a conviction.

Because we concluded that the sentence for felony murder was invalid, we further conclude that the first element of the *Leonard* rule, namely the "new factors" element, does not apply. In *Grobarchik v. State,* 102 Wis. 2d 461, 307 N.W. 170 (1981), this court stated that it is improper to apply the first element of the *Leonard* rule "when an invalid sentence is rendered. In such cases the trial court's dispositional plan is frustrated. An alteration of the sentence in order to bring it into conformity with the law is required to effectuate the court's intent. Such an alteration is required without reference to whether or not the defendant 'deserves' an increased term." *Id.* at 473.

The second element of the *Leonard* rule does, however, apply: the circuit court must state its grounds for increasing the sentence. This element is designed to insure that the sentencing judge does not modify a criminal sentence for the purpose of penalizing a defendant who exercises postconviction rights. *Grobarchik v. State, supra,* 102 Wis. 2d at 473. Our reasoning in *Grobarchik* is applicable here:

"When a defendant is resentenced for the purpose of correcting a prior invalid sentence, and when, as compared with the original sentence, the liberty interests of the defendant are substantially and adversely affected, the trial court must state on the record the reasons for so modifying the first sentence. His reasons must be based upon a desire to implement the original dispositional scheme as manifested by the record in the first sentencing proceeding . . . . This requirement will insure that resentencing will not be motivated by a desire to penalize the defendant for the exercise of his postconviction remedies." *Id.* at 474 (citations omitted).

The defendant asserts that the circuit court (Judge Randa) abused its discretion at resentencing by implementing the original dispositional scheme imposed at the first sentencing (Judge Fine) rather than by exercising its own discretion.[8] Applying the principles set forth in *Grobarchik,* we conclude that because the circuit judge resentenced this defendant to correct a prior invalid sentence, the circuit court correctly attempted to implement the original dispositional scheme reflected by the record in the first sentencing proceeding. The new sentence was properly based on the record as initially compiled by the sentencing judge without any new evidence. To encourage the judge at resentencing to exercise independent discretion is inconsistent with the purpose of implementing the original dispositional scheme and would open the door to potential vindictiveness in the resentencing process.

For the reasons set forth, we affirm the decision of the court of appeals.

*By the Court.*—The decision of the court of appeals is affirmed.

---

[8] It would have been preferable had this matter been assigned to the sentencing judge, Judge Fine, rather than to another judge.