570 F.2d 660
 TRINITY MEMORIAL HOSPITAL OF CUDAHY, INC., Plaintiff-Appellee,
v.
ASSOCIATED HOSPITAL SERVICE, INC., d/b/a the Wisconsin Blue
Cross Plan, Blue Cross Association, and Joseph
Califano, Secretary of Health, Education
and Welfare, Defendants-Appellants.
 No. 77-1069.
 United States Court of Appeals,
Seventh Circuit.
 Argued June 9, 1977.
Decided Dec. 16, 1977.
 
 William J. Mulligan, U. S. Atty., Milwaukee, Wis., Morton Hollander, Richard A. Olderman, Appellate Section, Civ. Div., Dept. of Justice, Washington, D.C., for defendants-appellants.
 Robert A. Wilmot, Jack Meyer, Milwaukee, Wis., for plaintiff-appellee.
 Before CUMMINGS and PELL, Circuit Judges, and MARSHALL, District Judge.*
 PELL, Circuit Judge.
 
 
 1
 Defendants Associated Hospital Service, Inc. (Plan), Blue Cross Association (BCA), and Califano (the Secretary) appeal from an order of the district court denying the defendants' motion to dismiss and granting plaintiff Trinity Hospital's motion for summary judgment and remanding the case to the Secretary for further proceedings. The first ground of the defendants' motion to dismiss was that the district court lacked jurisdiction over the subject matter. On appeal, the defendants-appellants again insist that the district court lacked jurisdiction to hear the case in light of Califano v. Sanders, 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977); and Weinberger v. Salfi, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975). Because the Medicare Act, 42 U.S.C. § 1395 et seq., did not expressly authorize judicial review of provider reimbursement disputes for the accounting periods relevant to this case, the instant appeal presents for the first time before this court the question whether a statutory provision other than 28 U.S.C. § 1331 and 5 U.S.C. § 701 et seq. authorizes a suit against the United States or the Secretary where a provider of services under the Medicare Program seeks a refund of reimbursable costs or a decision by an impartial adjudicative body constituted of qualified persons not employed by BCA or other affiliated organizations.
 
 I. Background
 
 2
 In early 1966, Trinity entered into an agreement with the Secretary with regard to the providing of services by Trinity to persons eligible for old age medical assistance under Part A of the Medicare Act. BCA and the Secretary entered into an agreement wherein BCA contracted to serve as fiscal intermediary in the administration of the Medicare program. BCA and the Plan entered into an agreement whereby Plan, as an agent of BCA, would perform certain duties as a fiscal intermediary. This contract resulted from Trinity's (and other providers') nomination of BCA as its fiscal intermediary. One of such duties which the Plan assumed was the determination by an annual audit of the Medicare reimbursable costs of Trinity incurred in the providing of such services. Actual payment of reimbursements are made by the Plan from funds provided directly to it by the Secretary.
 
 
 3
 Throughout the fiscal years ending September 30, 1968, September 30, 1969, and September 30, 1970, Trinity employed the combination method of reimbursement accounting set forth in 20 C.F.R. § 405.452.[1] In its required annual cost reports reflecting costs and expenses of the Medicare Program, Trinity characterized those services provided in its Intensive Care Unit, Coronary Care Unit and Ambulatory Care Unit (Special Services) as "ancillary" because of the nature of such services and because such characterization most effectively accomplished the stated objective of the Medicare Act of achieving the most accurate cost accounting.[2]
 
 
 4
 After auditing Trinity's cost reports for the fiscal years ending on September 30, 1968, and September 30, 1969, and while Trinity's 1970 cost report was being prepared, the Plan, on October 15, 1970, submitted required audit adjustments to Trinity in which Special Services were characterized as "routine services" and informed Trinity that said characterization would be required in its 1970 cost report. On the basis of the cost reports initially prepared and submitted, Trinity concedes it owed the Plan because of overpayments approximately $18,440 for 1968 and $26,781 for 1969. The audit adjustments made by the Plan in Trinity's cost reports resulted in Trinity owing the Plan $40,785 for 1968 and $46,658 for 1969. The 1970 cost report initially prepared by Trinity resulted in the Plan owing Trinity $2,145 by reason of previous inadequate payments for Medicare Costs. On the basis of the changes made in that report by the Plan after the audit Trinity owed the Plan $17,200. The total amount owing by Trinity under the cost method utilized by it for the three years would have been $43,076; the total amount as computed by the audit method was $104,643, or a difference of $61,567.
 
 
 5
 Trinity paid the amount of disputed reimbursement as determined by the Plan's audit under protest and thereafter engaged in informal negotiations and discussions with Plan representatives to resolve the dispute. Trinity not only attempted to substantiate its cost accounting but also proposed an alternative to the Plan. Trinity proposed that if its accounting method was determined to be in error, such determined error must constitute a material error and a basis for amending its submitted cost reports. It accordingly proposed amending its cost reports to reflect the departmental method of accounting for Medicare costs. See note 1 supra. Had Trinity's proposed amendment been accepted, Trinity would have owed the Plan $30,115 for 1968, $29,074 for 1969 and $2,918 for 1970 for excess reimbursement. The total difference between the amended reports and the Plan's audit determination was $42,536.
 
 
 6
 The Plan maintained its audit position and would not permit Special Services to be characterized as "ancillary" nor would it accept Trinity's amended cost reports. Trinity filed an appeal with the BCA Medicare Providers Appeals Committee (the Committee). On July 12, 1972, Trinity participated in a hearing before the Committee with regard to the decisions by the Plan to characterize Special Services as routine and to refuse to accept Trinity's amendment. At the hearing, Trinity objected to the constitution and procedure[3] of the Committee on the basis that it did not comply with due process. The Committee affirmed the Plan's original determination and denied Trinity's claims. Despite the lack of any formal appeal procedure from the BCA Appeals Committee, Trinity requested the Secretary to review the Committee's decision and resolve the matter according to the Medicare Act and regulations established thereunder. Although there was at that time no provision for an administrative remedy subsequent to the decision of the BCA Provider Appeals Committee, either in the regulations promulgated by the Secretary or under the Medicare Act, the Secretary did review the decision but denied Trinity's request that the decision of the Plan and the Committee be set aside.
 
 
 7
 Subsequently, on May 15, 1973, Trinity commenced the instant action in the district court. In its complaint, Trinity asserted that the action arose under the Medicare Act and predicated jurisdiction on § 10 of the Administrative Procedure Act, 5 U.S.C. §§ 701-06, and on 28 U.S.C. § 1331. The complaint alleged that the hearing procedure established by BCA and approved by the Secretary for constituting the Appeals Committee and the selection of its members deprived Trinity of due process of law by reason of bias and lack of impartiality. The complaint further alleged that the Committee's action in denying Trinity's reimbursement claim failed to conform to the standards required of administrative agencies in adjudications. Specifically, Trinity alleged that the failure and the refusal of the Plan, the BCA, and the Secretary to make full reimbursement to Trinity for its Medicare costs on the basis that the Special Services were to be characterized as "ancillary services" breached a duty under the Medicare Act and the regulations and rules promulgated thereunder. Trinity sought as relief a judgment that the Committee decision be vacated, that the Committee, Plan, and Secretary be ordered to refund the reimbursable costs either in the sum of $61,567 or $42,536, or that the cause be remanded to the Secretary for further action with instructions that such action be by an impartial decision maker.
 
 
 8
 The district court determined that it had jurisdiction over the action by virtue of § 10 of the Administrative Procedure Act, relying on this court's since-reversed decision of Sanders v. Weinberger, 522 F.2d 1167 (7th Cir. 1975), rev'd sub nom. Califano v. Sanders, supra. Applying the scope of review specified in 5 U.S.C. § 706, the court determined that the composition of the Appeals Committee and the participation both before and during the hearing of counsel for BCA represented a clear violation of due process. Having determined that Trinity was entitled to summary judgment as a matter of law, the court entered the order here challenged.[4]II. Jurisdiction
 
 
 9
 Because the Califano v. Sanders Court squarely held that the Administrative Procedure Act is not a grant of jurisdiction, the major question in this appeal focuses on the proper reading of Weinberger v. Salfi, supra. The Secretary argues that § 1331 does not grant district courts subject matter jurisdiction over Medicare provider reimbursement disputes and that no other statute vests jurisdiction in the district courts to hear such matters. Trinity responds by arguing that the Secretary's reading of Salfi is overbroad and distorts the Court's holding in that case. It argues that Salfi must be read against a backdrop of forceful opinions, such as Rusk v. Cort, 369 U.S. 367, 82 S.Ct. 787, 7 L.Ed.2d 809 (1962); Abbott Laboratories v. Gardner, 387 U.S. 136, 140, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967); and Califano v. Sanders, itself, which unequivocally establish a presumption in favor of reviewability particularly where, as here, the constitutionality of the administrative process is called into question.
 
 
 10
 The key statutory provision brought into issue is § 205(h) of the Social Security Act, 42 U.S.C. § 405(h).[5] That section is incorporated by reference into the Medicare Act. See 42 U.S.C. § 1395ii. In Salfi, supra, the Supreme Court held that the language of the third sentence of § 405(h) barred § 1331 jurisdiction of a constitutional challenge to a requirement that widows and stepchildren be related to a wage earner for at least nine months prior to his death to be eligible for survivor benefits under the Social Security Act. See 422 U.S. at 760-61, 95 S.Ct. 2457. The Secretary recognizes that Trinity has raised a constitutional claim but insists that its claim, like that of the Salfi plaintiffs, arises under the Social Security Act. Thus, the Secretary insists that the district court did not possess jurisdiction pursuant to 28 U.S.C. § 1331.
 
 
 11
 Trinity argues that a constitutional dilemma could be created if Salfi and § 405(h) are extended to provider reimbursement disputes. It concedes that there was no statutory provision for judicial review of disputes involving the proper amount or method of reimbursement for the accounting periods relevant to this case.[6] It contends that § 405(h) is only applicable where the Social Security Act provides an alternative method of review. It argues that this court must respect the overwhelming presumption of judicial review in cases raising constitutional issues by so limiting the applicability of the section.
 
 
 12
 The essential question in this appeal has been discussed in a number of recent decisions. See, e. g., Dr. John T. MacDonald Foundation v. Mathews, 554 F.2d 714 (5th Cir. 1977), petition for rehearing en banc granted, 562 F.2d 1015 (5th Cir. 1977); Springdale Convalescent Center v. Mathews, 545 F.2d 943 (5th Cir. 1977); Hazelwood Chronic and Convalescent Hospital, Inc. v. Weinberger, 543 F.2d 703, 705-06 (9th Cir. 1976), vacated, 430 U.S. 952, 97 S.Ct. 1595, 51 L.Ed.2d 801 (April 4, 1977), vacated and remanded to district court, 556 F.2d 981 (9th Cir. 1977); South Windsor Convalescent Home, Inc. v. Mathews, 541 F.2d 910, 912-14 (2d Cir. 1976); Gallo v. Mathews, 538 F.2d 1148, 1150-51 (5th Cir. 1976); St. Louis University v. Blue Cross Hospital Service, 537 F.2d 283, 287-94 (8th Cir. 1976), cert. denied, 429 U.S. 977, 97 S.Ct. 484, 50 L.Ed.2d 584 and Whitecliff, Inc. v. United States, 536 F.2d 347, 350-51 (Ct.Cl.1976), cert. denied, 430 U.S. 969, 97 S.Ct. 1652, 52 L.Ed.2d 361 (1977). These cases focus considerable attention on the constitutional problem which would arise if Salfi were read as completely precluding judicial review of constitutional claims.
 
 
 13
 Not surprisingly, there have arisen differences of judicial opinion. In MacDonald, supra, the majority held that during the period before it provided adequate statutory review within the Medicare Act, and during that period only, Congress did not intend § 405(h) to preclude federal-question jurisdiction over such matters as this. 554 F.2d at 718.[7] In St. Louis University, supra, the Eighth Circuit took a less expansive approach. It held that § 405(h) precluded the federal courts from assuming jurisdiction under 28 U.S.C. § 1331 of a count in the complaint which sought to obtain payments pursuant to the Medicare Act, 537 F.2d at 289, but also held that § 405(h) did not preclude jurisdiction to entertain due process challenges to the procedures adopted by the Secretary to determine Medicare reimbursements. Id. at 291-92. In South Windsor, supra, 541 F.2d at 913-14, the Second Circuit concluded that Salfi precluded federal question jurisdiction in Medicare cases like this one but found exclusive jurisdiction to review with the Court of Claims. Similarly, in Whitecliff, supra, 536 F.2d at 351, the Court of Claims determined that a provider might obtain judicial review, at least so far as to ensure compliance with statutory and constitutional provisions, under 28 U.S.C. § 1491.[8]
 
 
 14
 It is thus apparent that the courts have reached conflicting results on the jurisdictional question by virtue of diverse readings of the essential thrust of Salfi. That all the decisions ultimately find a jurisdictional basis demonstrates that there is little judicial quarrel with the proposition that, when constitutional questions are in issue, the courts generally will not read a statutory scheme as taking the extraordinary step of foreclosing jurisdiction unless Congress' intent to do so is manifested by clear and convincing evidence. See Califano v. Sanders, supra, 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed. 192. Indeed, the Califano v. Sanders majority interpreted both Salfi and Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), as adhering to that well-established principle. Id.
 
 
 15
 We read the more recent cases as demonstrating that the Supreme Court has attached some significance to the fact that both Salfi and Eldridge allowed judicial review under 42 U.S.C. § 405(g). Generally speaking, the courts of appeals have expressed the view that the availability of judicial review under that subsection played an important role in the Supreme Court's approach to § 1331 jurisdiction. See, e. g., South Windsor Convalescent Home, supra, 541 F.2d at 913-14; St. Louis University, supra, 537 F.2d at 292. That such a reading is a fair one seems established by the express statement of the Califano v. Sanders majority that a decision in Salfi denying jurisdiction under 42 U.S.C. § 405(g) "would effectively have closed the federal forum to the adjudication of colorable constitutional claims." 430 U.S. at 109, 97 S.Ct. at 986.
 
 
 16
 In the present case, Trinity cannot resort to judicial review under 42 U.S.C. § 405(g). That subsection of the Social Security Act is unavailable because, as incorporated into the Medicare Act, it governs provider eligibility and termination claims and not cost reimbursement disputes. 42 U.S.C. § 1395ff(c) (1970). Because of the legislative failure to incorporate the section which "(t)herein provided" statutory review, see note 5 supra, the Secretary reads the "sweeping and direct" words of § 405(h), see Salfi, supra, 422 U.S. at 757, 95 S.Ct. 2457, as literally precluding all review. See also MacDonald, supra, 554 F.2d at 716. Moreover, the Secretary highlights the question whether the Congress can close the federal courts entirely to constitutional challenges against federal statutes or action by reading Califano v. Sanders, as teaching that "judicial review of agency action may be entirely foreclosed without offending traditional notions of fair play." The Secretary also observes that Congress could have made the 1974 judicial review provisions applicable to all disputes between the BCA and providers regardless of the time they arose. He thus interprets the Congressional failure to do so as reflecting clear and convincing evidence that Congress intended that pre-1973 determinations as to reimbursable costs were entrusted to his absolute discretion. Cf. note 6 supra.
 
 
 17
 We can accept the Secretary's arguments only in part. We agree that the Secretary's decisions regarding Trinity's cost accounting are not reviewable by any court. The Secretary has decided that Trinity may not characterize its Special Services as "ancillary" within the meaning of 20 C.F.R. § 405.452. The second sentence of § 405(h) directly prohibits in a broad-sweeping manner all judicial review of such a decision involving promulgated regulations. Similarly, the Secretary has decided that Trinity was locked into its initial choice of the combination method of accounting. While the Committee acknowledged that there was some equity in Trinity's contention that it should be allowed the right to switch to the departmental method, the Secretary's decision affirming the Committee's ruling that Trinity was estopped from making the retroactive adjustment violated no statutory command. Under such circumstances, the second sentence of § 405(h) likewise precludes review by any person, tribunal, or governmental agency.[9] However, we cannot accept the Secretary's argument that the second sentence of § 405(h) precludes review of Trinity's constitutional claim. The record affirmatively establishes that the Secretary neither made findings of fact nor rendered a decision upon the constitutional issue. Because the Secretary took no action at all upon Trinity's constitutional objection, the preclusion of review language of the second sentence is simply inapplicable. Thus, the present case does not squarely present the question whether the second sentence of § 405(h) makes absolutely final the Secretary's decisions on constitutional claims. See generally Hart, The Power of Congress to Limit the Jurisdiction of Federal Courts: An Exercise in Dialectic, 66 Harv.L.Rev. 1362 (1953).
 
 
 18
 The Secretary's claim of absolute discretion regarding pre-1973 determinations as to reimbursable costs overstates the reach of Califano v. Sanders, and Salfi. His reading of the former decision discounts the significance of the Califano v. Sanders language regarding the denial of access to the federal courts for constitutional claims. His interpretation of the significance of the legislative creation of only a partial remedy for Medicare providers overlooks the important role of alternative remedies. Finally, the recent Supreme Court preclusion of review cases do not support a claim of absolute and unreviewable discretion. The Court has recently found an implied preclusion of review within the context of the Voting Rights Act of 1965, see Morris v. Gressette, 432 U.S. 491, 505 n.20, 97 S.Ct. 2411, 53 L.Ed.2d 506 (1977), but its ruling must be read in light of the fact that Congress had established an alternative method for securing relief. See Briscoe v. Bell, 432 U.S. 404, 97 S.Ct. 2428, 53 L.Ed.2d 439 (1977).
 
 
 19
 Our disagreement with the Secretary's argument that, taken together, Califano v. Sanders and Salfi totally preclude judicial review of provider reimbursement disputes does not mean that we reject his basic contention that the district court lacked jurisdiction over the subject matter. We hold that42 U.S.C. § 405(h) precludes the use of 28 U.S.C. § 1331 as a jurisdictional basis for Trinity's action. See Salfi, supra. Thus we reject the position taken in MacDonald and St. Louis University holding that § 1331 afforded jurisdiction for due process claims.[10] We agree with the South Windsor court that § 405(h) does not serve to bar review in the Court of Claims since, although the present suit is under the Medicare Act, 28 U.S.C. § 1491 was and is not included in "section 41 of Title 28." 541 F.2d at 914. See note 5 supra.
 
 
 20
 There can be little doubt that the Court of Claims has jurisdiction over Trinity's due process claim. In Whitecliff, Inc., supra, 536 F.2d at 350-51, that court clearly ruled that it did possess jurisdiction over a provider claim analogous to that here presented.[11] We recognize that there is a possible incongruity in stating that the due process claim is reviewable while holding that the second sentence of § 405(h) bars review of the merits of the Secretary's decisions regarding cost accounting. However, we are persuaded that the Court of Claims is empowered to set aside, albeit without reviewing the merits of an administrative decision which is the end result of a constitutionally inadequate hearing procedure. Assuming that Trinity takes its suit to the Court of Claims following upon our reversal of the district court's order denying the Secretary's motion to dismiss and assuming further that that court finds merit in Trinity's due process claim, there remains the possibility that a new hearing by impartial administrative review body could result in a different administrative decision. The merits of the second decision, like the merits of the first, would be completely unreviewable by any court. See 42 U.S.C. § 405(h).
 
 
 21
 In accordance with the foregoing opinion the granting of the summary judgment and the denial of the Secretary's motion to dismiss on jurisdictional grounds must be and are now reversed. Consistently with the approach taken by the Second Circuit in South Windsor, 541 F.2d at 914, the dismissal will be "without prejudice to plaintiff's proceeding with its suit in the Court of Claims."
 
 
 22
 REVERSED.
 
 
 23
 MARSHALL, District Judge, concurring.
 
 
 24
 The district court concluded it had subject matter jurisdiction of this case under § 10 of the Administrative Procedure Act, 5 U.S.C. §§ 701-706. We now know that § 10 does not provide an independent basis of subject matter jurisdiction. Califano v. Sanders, 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977).
 
 
 25
 Trinity contends, however, that subject matter jurisdiction exists under 28 U.S.C. § 1331. I am of the opinion that the third sentence of 42 U.S.C. § 405(h), as interpreted and applied in Weinberger v. Salfi, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975), precludes that contention. While Congress provided for direct review of certain Medicare decisions by the Secretary, e. g., 42 U.S.C. § 1395ff(c), which incorporates 42 U.S.C. § 405(b) and (g), it did not provide for direct review of his instant decision.
 
 
 26
 In anticipation that aggrieved persons might seek a form of collateral review of Social Security decisions by the Secretary, Congress expressly proscribed "action(s) against . . . the Secretary . . . under section (1331) of Title 28 to recover on any claim arising under this subchapter." § 405(h). That prohibition was expressly incorporated into the Medicare Act. 42 U.S.C. § 1395ii. In Salfi the Court held, in light of the comprehensive direct review provisions of the Social Security Act, that district courts must respect that Congressional limit on § 1331 jurisdiction even when the aggrieved person's claim involves alleged violations of the Constitution by the Secretary. There is no reason to believe the Court would reach a contrary result in a case such as this one involving a Medicare claim.
 
 
 27
 I would, however, leave to the Court of Claims the question of its subject matter jurisdiction and the scope of its review under 28 U.S.C. § 1491. See Whitecliff Inc. v. United States, 536 F.2d 347 (Ct.Cl.1976), cert. denied, 45 U.S.L.W. 3691 (April 18, 1977). But with review in the Court of Claims possibly available, it is not clear that all avenues of judicial review are closed to plaintiff under our holding that the district court lacked subject matter jurisdiction in this case. Accordingly, we need not intimate any view as to the constitutionality of a Congressional scheme that would bar all judicial review of disputes such as this.
 
 
 28
 Thus, I concur in the decision to reverse the judgment of the district court for want of subject matter jurisdiction.
 
 
 
 *
 District Judge Prentice H. Marshall of the United States District Court for the Northern District of Illinois is sitting by designation
 
 
 [1]
 20 C.F.R. § 405.452 (1971), in pertinent part, provided:
 (a) Principle. Total allowable costs of a provider shall be apportioned between program beneficiaries and other patients so that the share borne by the program is based upon actual services received by program beneficiaries. To accomplish this apportionment, the provider shall have the option of either of the two following methods:
 (1) Departmental method. The ratio of beneficiary charges to total patient charges for the services of each department is applied to the cost of the department.
 (2) Combination method. The cost of "routine services" for program beneficiaries is determined on the basis of average cost per diem of these services for all patients; to this is added the cost of ancillary services used by beneficiaries, determined by apportioning the total cost of ancillary services on the basis of the ratio of beneficiary charges for ancillary services to total patient charges for such services.
 (b) Definitions (1) Apportionment. Apportionment means an allocation or distribution of allowable cost between the beneficiaries of the health insurance program and other patients.
 (2) Routine services. Routine services means the regular room, dietary, and nursing services, minor medical and surgical supplies, and the use of equipment and facilities for which a separate charge is not customarily made.
 (3) Ancillary services. Ancillary services or special services are the services for which charges are customarily made in addition to routine services.
 
 
 [2]
 42 U.S.C. § 1395x(v)(1) (1970), in relevant part, provided:
 The reasonable cost of any services shall be determined in accordance with regulations establishing the method or methods to be used, and the items to be included, in determining such costs for various types or classes of . . . services; . . . Such regulations shall (A) take into account both direct and indirect costs of providers of services in order that, under the methods of determining costs, the costs with respect to individuals covered by the insurance programs established by this subchapter will not be borne by individuals not so covered, and the costs with respect to individuals not so covered will not be borne by such insurance programs, and (B) provide for the making of suitable retroactive corrective adjustments where for a provider of services for any fiscal period, the aggregate reimbursement produced by the methods of determining costs proves to be either inadequate or excessive . . .
 The plaintiff has read the statutory language as suggesting that the principal, the dominant theme that Congress has mandated in the Medicare Act is that there be accurate cost allocation between Medicare patients and non-Medicare patients, so that one is not riding on the expense of the other, and vice versa.
 
 
 [3]
 One of the principal grounds of objection was that the extensive participation of BCA employees as members of the Committee resulted in there being no impartial decision maker. Other procedures of BCA in the decisional process were also challenged
 
 
 [4]
 Because the district court rested its jurisdictional ruling on this court's decision in Sanders, supra, it found it unnecessary to reach the question of 28 U.S.C. § 1331 jurisdiction. However, it did note that "(t)he Sanders case disposes of the argument under the recent United States Supreme Court decision of Weinberger v. Salfi, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975)."
 
 
 [5]
 42 U.S.C. § 405(h) (1970 ed. and Supp. V, 1975), provides:
 The findings and decisions of the Secretary after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decisions of the Secretary shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the Secretary, or any officer or employee thereof shall be brought under section 41 of Title 28 to recover on any claim arising under this subchapter.
 28 U.S.C. § 1331 was previously codified in the 1940 edition as a subsection of section 41 of Title 28.
 
 
 [6]
 In 1972 and 1974, Congress enacted provisions and amendments expanding statutory review of provider reimbursement disputes. An amendment of 1972 established a Provider Reimbursement Review Board with jurisdiction to review disputes where the amount in controversy exceeds $10,000. Social Security Amendments of 1972, P.L. No. 92-603, § 243, 86 Stat. 1420, 42 U.S.C. § 1395oo. In 1974 Congress further enlarged the review provision of § 1395oo to grant providers the right to obtain judicial review, in a district court, of any decision of the Board and of any reversal, affirmance, or modification of the Board's decision by the Secretary. P.L. No. 93-484, § 3(a), 88 Stat. 1459 (1974), 42 U.S.C. § 1395oo (f)(1). These provisions apply only to cost reporting periods ending on or after June 30, 1973, and are therefore inapplicable to the present dispute
 
 
 [7]
 In a cogent dissent, Judge Clark explained why he was not able to divine a congressional intent to grant court review of the Secretary's decisions in a Medicare matter relating to Medicare program reimbursements. He saw a great portent for danger to the basic concept that the judicial role of inferior federal courts is limited to the jurisdiction expressly conferred by Congress if judges were "able to imply jurisdiction because we think it ought to exist where Congress has literally given none." Id. at 719. The dissenting opinion states that what the majority candidly described as a "strained construction" represented judicial action exceeding the courts' interpretative license
 
 
 [8]
 28 U.S.C. § 1491, in pertinent part, provides:
 The Court of Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort. . . . In any case within its jurisdiction, the court shall have the power to remand appropriate matters to any administrative or executive body or official with such direction as it may deem proper and just.
 
 
 [9]
 By giving literal effect to the second sentence of § 405(h), we do not hold that the Secretary's decisions may not be set aside, albeit without reviewing their merits, when in direct conflict with an express mandate of the Medicare Act. Federal district courts are empowered to grant mandamus relief where there is a clear right in the plaintiff to the relief sought, a plainly defined and peremptory duty on the part of the defendant to do the act in question, and no other adequate remedy available. See generally City of Milwaukee v. Saxbe, 546 F.2d 693, 699-701 (7th Cir. 1976). See also Holmes v. United States Board of Parole, 541 F.2d 1243, 1247-49 (7th Cir. 1976) (overruled in part not pertinent to the present point in Solomon v. Benson, 563 F.2d 339 (7th Cir. 1977)). In the instant case, however, Trinity's complaint was not framed in such a way as to invoke 28 U.S.C. § 1361, a statutory provision which was not included in "section 41 of Title 28," see note 5 supra. Accordingly, we have no occasion to determine whether the federal district courts are authorized by that statutory provision to ignore completely the Secretary's decisions regarding the proper interpretation and application of formal regulations and informal Intermediary Letters and to order reimbursement pursuant to the appropriate subsections of the Medicare Act. For a brief discussion of the statutory mandate, see Whitecliff, Inc., supra, 536 F.2d at 352. See also the very recent decision of the District of Columbia Court of Appeals in Association of American Medical Colleges v. Califano, 186 U.S.App.D.C. --- - ---, 569 F.2d 101, 110, 114, No. 75-1888 (1977), slip op. at 20-27, which discusses the availability of mandamus relief in suits seeking Medicare provider reimbursement
 
 
 [10]
 This opinion has been circulated among all judges of this court in regular active service. No judge favored a rehearing en banc on the position taken in this opinion rejecting the position taken in MacDonald and St. Louis University
 
 
 [11]
 Accord, Ulman v. United States, 558 F.2d 1 (Ct.Cl.1977); St. Elizabeth Hospital v. United States, 558 F.2d 8 (Ct.Cl.1977)