686 F.2d 1154
 Bertha HERZOG, James Vecchio and Joseph Balombin, on behalf
of themselves and as representatives of the Class
herein defined, Plaintiffs-Appellants,
v.
SECRETARY OF HEALTH, EDUCATION AND WELFARE, Defendant-Appellee.
 No. 80-3647.
 United States Court of Appeals,
Sixth Circuit.
 Submitted on Briefs Feb. 5, 1982.
Decided July 9, 1982.
 
 N. D. Rollins, Cleveland, Ohio, for plaintiffs-appellants.
 James R. Williams, U. S. Atty., Cleveland, Ohio, Robert C. Cordek, Asst. Regional Atty., Dept. of H. H. S., Chicago, Ill., for defendant-appellee.
 Before LIVELY and KEITH, Circuit Judges, and PHILLIPS, Senior Circuit Judge.
 KEITH, Circuit Judge.
 
 
 1
 The United States District Court for the Northern District of Ohio held that it did not have subject matter jurisdiction over claims involving the amount payable under Part B of the Medicare Act. We agree, and affirm the judgment of District Judge Lambros.
 
 I. BACKGROUND OF THE MEDICARE PROGRAM
 
 2
 The Federal Health Insurance for the Aged and Disabled, popularly known as Medicare, 42 U.S.C. §§ 1395 et seq., consists of two parts. Part A of the Medicare Program ("Part A"), which is not in issue in this case, provides insurance for hospital and related post-hospital services. 42 U.S.C. §§ 1395c-1395i-2. Part B of the Medicare Program ("Part B") provides insurance for supplementary medical services, primarily physicians' services. 42 U.S.C. §§ 1395j-1395w. The appeal in this case involves Part B.
 
 
 3
 Part B is a voluntary health insurance program whose operation is similar to private health insurance programs. Only persons 65 years or older or persons who are disabled may enroll. 42 U.S.C. § 1395o. Eligibility for Part B benefits is not dependent upon financial need. Part B is financed by the Federal Supplementary Medical Insurance Trust Fund. 42 U.S.C. § 1395f. The Trust Fund is funded by appropriations from the Treasury and monthly premiums paid by individuals enrolled in the Part B program. See 42 U.S.C. §§ 1395j, 1395r(b) and (c), 1395t and 1395w.
 
 
 4
 Individuals enrolled in Part B may pay for a covered service and request reimbursement, 42 U.S.C. § 1395u. Typically, the amount reimbursed is eighty percent of the reasonable charges for the services. 42 U.S.C. § 1395l (a)(1). Alternatively, the beneficiary may assign the right to reimbursement to the provider of the service, who collects as an assignee of the beneficiary. 42 U.S.C. § 1395u(b)(3)(ii).
 
 
 5
 The Secretary of Health and Human Services ("the Secretary"), the defendant-appellee, administers the Medicare Program. The Secretary is authorized to contract with private insurance carriers to administer the payment of Part B claims on his behalf. The Secretary pays the carriers' costs of claims administration, 42 U.S.C. § 1395u(c), and they act as the Secretary's agents. See 42 C.F.R. § 421.5(b).
 
 
 6
 When a carrier receives a bill for a particular service, it decides initially whether the claim satisfies the Part B criteria. The claim must arise from a medically necessary service, be reasonable, and otherwise be covered under Part B. See 42 U.S.C. § 1395y(a); 42 C.F.R. § 405.803(b). If the carrier determines that a claim satisfies this criteria, the carrier pays the claim out of federal funds. See 42 U.S.C. §§ 1395u(a)(1), 1395u(b)(3), and 1395u(c).
 
 
 7
 When a carrier receives a bill for a particular service, it decides initially whether the claim satisfies the Part B criteria. The claim must arise from a medically necessary service, be reasonable, and otherwise be covered under Part B. See 42 U.S.C. § 1395y(a); 42 C.F.R. § 405.803(b). If the carrier determines that a claim satisfies this criteria, the carrier pays the claim out of federal funds. See 42 U.S.C. §§ 1395u(a)(1), 1395u(b)(3), and 1395u(c).
 
 
 8
 If the carrier refuses to reimburse a portion of a claim, however, the claimant has a right to a limited appeal. First, the claimant has a right to review by a carrier employee other than the initial decisionmaker. See Schweiker v. McClure, --- U.S. ---- at ----, 102 S.Ct. 1665, 1668, 72 L.Ed.2d 1 (1982). Second, if the amount disputed is $100 or more, a claimant has a right to an oral hearing before an officer chosen by the carrier. See 42 U.S.C. § 1395u(b)(3)(C). The hearing officer receives evidence and hears arguments concerning the disputed claim. See Schweiker, 102 S.Ct. at 1668. Thereafter, the hearing officer must render a written decision based on the record. 42 C.F.R. § 405.834 (1980).
 
 II. FACTS
 
 9
 The plaintiffs-appellants are all enrolled in the Medicare program. The plaintiffs in this case all received Chelation Therapy treatments for arteriosclerosis from their personal physicians. In each case, the Chelation Therapy was performed in the doctor's office rather than in a hospital. The plaintiffs sought and were denied reimbursement under Part B of the Medicare Act. Each plaintiff sought administrative review of the original decision. However, reimbursement was again denied on reconsideration. Consequently, each plaintiff requested a hearing by a hearing officer. The hearing officer in each case affirmed the denial of the reimbursement request. The hearing officer's decision represented the final decision of the Secretary.
 
 
 10
 The plaintiffs, individually and as members of a class, filed a complaint in the United States District Court for the Northern District of Ohio, alleging that the denial of their reimbursement requests violated the Medicare Act. The complaint, however, did not allege any constitutional violations. The complaint alleged that the district court had jurisdiction pursuant to 28 U.S.C. §§ 1331(a), 1361, 2201 and 2202, and 5 U.S.C. §§ 703 and 706. The Secretary filed a motion to dismiss for lack of subject matter jurisdiction.
 
 
 11
 The district court found that it lacked subject matter jurisdiction, and dismissed the plaintiffs' complaint. The court reasoned 1) that 42 U.S.C. § 1395ff precluded judicial review of the amounts recoverable under Part B of the Medicare Act; 2) that Section 205(h) of the Social Security Act, 42 U.S.C. § 405(h), precluded federal question jurisdiction under 28 U.S.C. § 1331(a); 3) that the Administrative Procedure Act, 5 U.S.C. §§ 703 and 706, was not a basis of jurisdiction; and 4) that neither the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, nor the Mandamus statute, 28 U.S.C. § 1361, create jurisdiction. The plaintiffs perfected this appeal.
 
 
 12
 On appeal, the plaintiffs argue that the district court erred in dismissing their complaint for lack of subject matter jurisdiction. We disagree.
 
 III. JURISDICTION UNDER THE MEDICARE ACT
 
 13
 The plaintiffs first argue that 42 U.S.C. § 1395ff[1] provides for judicial review in this case. We disagree. The Supreme Court in United States v. Erika, --- U.S. ----, 102 S.Ct. 1650, 72 L.Ed.2d 12 (1982), unanimously held that the language of 42 U.S.C. § 1395ff and the related legislative history indicate that Congress intended to preclude judicial review of the amount of benefits payable under Part B of the Medicare Act.
 
 
 14
 The Erika court relied principally upon the language of § 1395ff in holding that the Court of Claims did not have subject matter jurisdiction:
 
 
 15
 Congress ... provided explicitly for review by the Secretary of "determination(s) of whether an individual is entitled to benefits under part A or part B, and (of) the determination of the amount of benefits under part A...." § 1395ff(a) (emphasis added). Individuals dissatisfied with the Secretary's determination on such matters are granted the right to additional administrative review, together with a further option of judicial review, in two instances only: when the dispute relates to their eligibility to participate in either Part A or Part B, and when the dispute concerns the amount of benefits to which they are entitled under Part A. § 1395ff(b).
 
 
 16
 Section 1395ff thus distinguishes between two types of administrative decisions: eligibility determinations (that decide whether an individual is 65 or over or "disabled" within the meaning of the Medicare program) and amount determinations (that decide the amount of the Medicare payment to be made on a particular claim). Conspicuously, the statute fails to authorize further review for determinations of the amount of Part B awards. In the context of the statute's precisely drawn provisions, this omission provides persuasive evidence that Congress deliberately intended to foreclose further review of such claims. (citations omitted) Erika, 102 S.Ct. at 1653-54. (Emphasis in original)
 
 
 17
 The Court also found the legislative history of § 1395ff persuasive support for its conclusion that Congress intended to foreclose judicial review of the amount of benefits payable under Part B. The Court relied upon a statement by Senator Bennett, who in 1972 introduced an amendment to 42 U.S.C. § 1395ff(b).[2] Senator Bennett stated that the amendment to § 1395ff(b) was intended to clarify "the intent of existing law, which 'greatly restricted' the appealability of Medicare decisions 'in order to avoid overloading the courts with quite minor matters.' " Erika, 102 S.Ct. at 1655, quoting, 118 Cong.Rec. 33992 (1972). The Court also found the following Conference Committee report persuasive evidence of Congressional intent in amending 42 U.S.C. § 1395ff(b):
 
 
 18
 Amendment No. 561: The Senate amendment added a new section to the House bill which would make clear that there is no authorization for an appeal to the Secretary or for judicial review on matters solely involving amounts of benefits under Part B, and that insofar as Part A amounts are concerned, appeal is authorized only if the amount in controversy is $100 or more and judicial review only if the amount in controversy is $1,000 or more.
 
 
 19
 The House recedes. H.R.Rep.No.92-1605, 92nd Cong.2d Sess. 61 (1972), U.S.Code Cong. & Admin.News 1972, p. 5370.
 
 
 20
 The Supreme Court's reasoning in Erika applies with equal force to this case. We conclude that the language of § 1395ff and the accompanying legislative history indicate that Congress sought to preclude federal judicial review of the amount of benefits payable under Part B. Other pre-Erika circuit courts have relied upon the language of § 1395ff and concluded that 42 U.S.C. § 1395ff precludes federal district courts' review of the amounts payable under Part B. Drennan v. Harris, 606 F.2d 846, 849 (9th Cir. 1979); Cervoni v. Secretary of Health, Education and Welfare, 581 F.2d 1010, 1015 (1st Cir. 1978); St. Louis University v. Blue Cross Hospital Service, 537 F.2d 283, 290 (8th Cir.) cert. denied sub. nom., Faith Hospital Association v. Blue Cross Hospital Service, Inc., 429 U.S. 977, 97 S.Ct. 484, 50 L.Ed.2d 584 (1976).
 
 
 21
 IV. FEDERAL QUESTION JURISDICTION UNDER 28 U.S.C. § 1331
 
 
 22
 The district court also held that there was no federal question jurisdiction under 28 U.S.C. § 1331.[3] We agree.
 
 
 23
 Section 205(h) of the Social Security Act, 42 U.S.C. § 405(h), is expressly incorporated into the Medicare Act and applies to the Medicare Act "to the same extent as (it is) applicable with respect to Title II." 42 U.S.C. § 1395ii. Section 205(h) provides:
 
 
 24
 The findings and decisions of the Secretary after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the Secretary shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the Secretary, or any officer or employee thereof shall be brought under Section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter.
 
 
 25
 The Supreme Court held in Weinberger v. Salfi, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975), that section 205(h) precluded federal question jurisdiction of a constitutional challenge to the "duration-of-relationship" requirements of the Social Security Act. The Court rejected the argument that section 205(h) was an exhaustion of administrative remedies requirement and stated:
 
 
 26
 That the third sentence of § 405(h) is more than a codified requirement of administrative exhaustion is plain from its own language, which is sweeping and direct and which states that no action shall be brought under § 1331, not merely that only those actions shall be brought in which administrative remedies have been exhausted. Id. at 757, 95 S.Ct. at 2463.
 
 
 27
 The Court also rejected the argument that federal question jurisdiction existed because the action arose under the Constitution and not under Title II:
 
 
 28
 It would, of course, be fruitless to contend that appellees' claim is one which does not arise under the Constitution, since their constitutional arguments are critical to their complaint. But it is just as fruitless to argue that this action does not also arise under the Social Security Act. For not only is it Social Security benefits which appellees seek to recover, but it is the Social Security Act which provides both the standing and the substantive basis for the presentation of their constitutional contentions. Id. at 760-761, 95 S.Ct. at 2464.
 
 
 29
 Accordingly, the Court concluded that the third sentence of section 405(h) precluded federal question jurisdiction for the adjudication of the constitutional claims.
 
 
 30
 A. Plaintiffs' Claims Arising Under the Medicare Act
 
 
 31
 The third sentence of section 205(h) also precludes federal question jurisdiction in this case. The plaintiffs' complaint seeks to recover benefits under Part B of the Medicare Act. The same considerations which persuaded Congress to limit federal question jurisdiction under the Social Security Act apply to the Medicare Act. St. Louis University v. Blue Cross Hospital Service, 537 F.2d at 289. Consequently, the present action to determine the amount of benefits payable under Part B is barred absolutely by section 205(h). Other Circuits have also held that federal question jurisdiction over substantive Medicare reimbursement disputes is barred by section 205(h) of the Social Security Act, 42 U.S.C. § 405(h). Kechijian v. Califano, 621 F.2d 1, 4 (1st Cir. 1980) (Part B); Drennan v. Harris, 606 F.2d at 849 (Part B); Hospital San Jorge, Inc. v. United States Secretary of Health, Education and Welfare, 598 F.2d 684, 686 (1st Cir. 1979); Cervoni v. Secretary of Health, Education and Welfare, 581 F.2d, at 1016 (Part B); Pritt v. Nationwide Insurance Co., 548 F.2d 1129 (4th Cir. 1977) (per curiam) (Part B); Trinity Memorial Hospital of Cudahy, Inc. v. Associated Hospital Service, Inc., 570 F.2d 660, 666 (7th Cir. 1977); Association of American Medical Colleges v. Califano, 569 F.2d 101, 107 (D.C.Cir., 1977); St. Louis University, 537 F.2d at 289 (Part B and Part A).
 
 B. Plaintiffs' Constitutional Claims
 
 32
 The plaintiffs have raised due process and equal protection claims for the first time on this appeal. They argue that the Secretary's recognition of Chelation Therapy for treatment of arteriosclerosis under Part A but not under Part B is a violation of Fifth amendment due process and equal protection. Plaintiffs argue that the district court did in fact have federal question jurisdiction over these constitutional claims.
 
 
 33
 The plaintiffs argue that Salfi has never been interpreted to preclude all judicial review of constitutional claims arising under the Medicare Act. We agree. The Salfi court's holding that section 205(h) barred federal question jurisdiction over the parties' constitutional claims was based in part upon the existence of the jurisdictional grant contained in 42 U.S.C. § 405(g). The Court noted that a statute which precluded all judicial review of constitutional questions would raise serious constitutional problems. Salfi, 422 U.S. at 762, 95 S.Ct. at 2465. Because of the jurisdictional grant contained in section 405(g), the Court avoided the potential problem of precluding all judicial review of constitutional challenges arising under the Social Security Act. Id.
 
 
 34
 Section 405(g) was not totally incorporated into the Medicare Act by 42 U.S.C. § 1395ii. Drennan v. Harris, 606 F.2d at 846; Cervoni, 581 F.2d at 1016; St. Louis University, 537 F.2d at 288 n.5. Rather, section 405(g) is partially incorporated into the Medicare Act by 42 U.S.C. § 1395ff.[4] Section 1395ff, however, does not provide for judicial review of constitutional claims arising under Part B. Therefore, there remains a question of whether the district court had federal question jurisdiction over constitutional challenges arising under Part B.
 
 
 35
 Some circuits have held that the Salfi court's interpretation of section 405(h) forecloses federal question jurisdiction in reimbursement actions arising under the Medicare Act even where constitutional questions are raised. Hopewell Nursing Home, Inc. v. Schweiker, 666 F.2d 34, 40 (4th Cir. 1981); Alabama Hospital Association v. Califano, 587 F.2d 762 (5th Cir.), cert. denied, sub nom., Alabama Hospital Association v. Harris, 444 U.S. 826, 100 S.Ct. 48, 62 L.Ed.2d 32 (1979); Drennan v. Harris, 606 F.2d at 850; Rhode Island Hospital v. Califano, 585 F.2d 1153, 1157 (1st Cir. 1978); Dr. John T. MacDonald Foundation v. Califano, 571 F.2d 328, 331 (5th Cir.), (en banc), cert. denied, 439 U.S. 893, 99 S.Ct. 250, 58 L.Ed.2d 238 (1978); Trinity Memorial Hospital v. Associated Hospital Service, 570 F.2d at 665; South Windsor Convalescent, Inc. v. Mathews, 541 F.2d 910, 913 (2d Cir. 1976). Some of these courts found that the Court of Claims had jurisdiction to hear the constitutional questions. Alabama Hospital, 587 F.2d at 763; Drennan v. Harris, 606 F.2d at 850; Trinity Memorial Hospital, 570 F.2d at 667; John T. MacDonald, 571 F.2d at 332; South Windsor, 541 F.2d at 913-914. At least one court found that the Medicare Act itself provided for judicial review. Rhode Island Hospital, 585 F.2d at 1159. Consequently, these courts avoided the serious constitutional question of whether Congress could preclude all judicial review of a constitutional challenge to a statute.
 
 
 36
 In Chelsea Community Hospital v. Michigan Blue Cross, 630 F.2d 1131 (6th Cir. 1980), however, this Court found that section 405(h) was inapplicable to pre-1973 Medicare provider reimbursement actions. The appellants, health care providers within the meaning of Part A of the Medicare Act, alleged that their Fifth Amendment due process rights were violated by the Secretary's delegation of final adjudicatory power to a private body where there was no substantive judicial review. The court held that the availability of judicial review under the Social Security Act was crucial to the Court's interpretation of § 405(h) in Salfi." Id. at 1134. The Court noted that several circuits had held that Section 405(h) precluded federal question jurisdiction of Medicare-provider reimbursement disputes, but avoided the preclusion of all judicial review because the Court of Claims could exercise jurisdiction.
 
 
 37
 The Court in Chelsea, however, rejected the conclusion that section 405(h) did not apply to the Court of Claims' exercise of jurisdiction. The Chelsea court held that "(i)f § 405(h) does apply to the present controversy, it is binding on all courts." Id. at 1135. However, the Court held that section 405(h) was inapplicable to pre-1973 reimbursement claims. The Court reasoned that Salfi was distinguishable because the statutory review provision present in Salfi and essential to Salfi's logic was not present there. The Court also noted that grave constitutional doubts would be raised by a holding that the Secretary had "unreviewable discretion in reimbursing medicare providers, particularly if this discretionary authority was delegable to private parties." Id. (citations omitted). Finally, the court concluded that the lack of a specific provider-reimbursement appeals mechanism did not demonstrate that Congress intended that Medicare providers would be entitled to whatever reimbursement the Secretary or fiscal intermediary granted.
 
 
 38
 The Court's analysis and holding in Chelsea is inapposite in this case. First, Chelsea involved Part A of the Medicare Act and there was some ambiguity on whether the "lack of a specific provider-reimbursement appeals mechanism demonstrate(d) Congressional volition or omission." Id. at 1136. The instant case, however, involves the determination of the amount of benefits payable under Part B. It is clear that Congress intended to preclude judicial review of the amount payable under Part B of the Medicare Act. Erika, --- U.S. ----, 102 S.Ct. 1650, 72 L.Ed.2d 12; 42 U.S.C. § 1395ff. Second, and more importantly, the plaintiffs in Chelsea challenged the constitutionality of the procedures for reimbursing providers of Medicare services. The plaintiffs in the instant case, however, did not allege any constitutional claims in their complaint. Moreover, the plaintiffs apparently did not raise their constitutional claims at any time before their complaint was dismissed for lack of subject matter jurisdiction. Rather, they argue for the first time on this appeal that recognizing Chelation Therapy under Part A but not under Part B constitutes a due process and equal protection violation. Consequently, the district court did not have an opportunity to address the question of whether it had jurisdiction over these constitutional questions. This issue was not raised below, and will not be considered on appeal. Olund v. Swarthout, 459 F.2d 999 (6th Cir.), cert. denied, 409 U.S. 1119, 93 S.Ct. 899, 34 L.Ed.2d 703 (1972); Dr. John T. MacDonald Foundation, Inc. v. Califano, 571 F.2d at 330 n.2.
 
 
 39
 We would be extremely hesitant to conclude that section 205(h) precludes all judicial review of the plaintiff's constitutional claims. Such a conclusion would raise grave constitutional questions. Salfi, 422 U.S. at 762, 95 S.Ct. at 2465; Califano v. Sanders, 430 U.S. 99, 109, 97 S.Ct. 980, 986, 51 L.Ed.2d 192 (1977); Johnson v. Robison, 415 U.S. 361, 366-367, 94 S.Ct. 1160, 1165, 39 L.Ed.2d 389 (1974). However, we need not, and do not, reach the issue of whether section 205(h) of the Social Security Act precludes review by the federal district court of the plaintiffs' constitutional claims. Accordingly, we affirm the judgment of District Judge Lambros.[5]
 
 
 40
 PHILLIPS, Senior Circuit Judge (concurring in the result).
 
 
 41
 I agree that the district court does not have subject matter jurisdiction in this case and that the judgment dismissing the action should be affirmed. This conclusion is compelled by the decisions of the Supreme Court in Schweiker, Secretary v. McClure, --- U.S. ----, 102 S.Ct. 1665, 72 L.Ed.2d 1 (1982) and United States v. Erika, Inc., --- U.S. ----, 102 S.Ct. 1650, 72 L.Ed.2d 12 (1982).
 
 
 42
 In addition to their statutory contentions, the appellants assert that the district court erred in failing to pass upon the constitutional questions which vested it with jurisdiction to hear their complaint. They contend that the availability of judicial review in Medicare Part A claims and the unavailability of judicial review in Medicare Part B claims raises a "significant equal protection issue which cannot be ignored." They further assert that denial of a judicial review deprives them of due process of law because they are premium-paying enrollees under a contract of insurance providing for medical services and that "Medicare Part B is not a gratuity." The majority has chosen not to discuss these issues because the plaintiffs did not allege any constitutional claims in their complaint and "(m)oreover, the plaintiffs apparently did not raise their constitutional claims at any time before their complaint was dismissed for lack of subject matter jurisdiction."
 
 
 43
 Although the appellants did not raise their constitutional issues in their complaint, the record shows that they relied strongly on these contentions in their district court brief in opposition to defendant's motion to dismiss. The defendant never filed a "responsive pleading" within the meaning of Fed.R.Civ.P. 15(a) and, therefore, under Rule 15(a) the plaintiffs had the right to amend their complaint "once as a matter of course." A motion to dismiss is not a responsive pleading. See 3 Moore's Federal Practice P 15.07(2) at 15-46 (2d ed. 1982). Leave to amend a complaint to cure a jurisdictional defect should be given freely. Kelly v. Kentucky Oak Mining Co., 491 F.2d 318, 320 (6th Cir. 1974). Defective allegations of jurisdiction can be cured in trial or appellate courts. 28 U.S.C. § 1653. The plaintiffs-appellants' assertion of constitutional issues in their brief in opposition to the motion of defendant to dismiss was sufficient to amend the complaint. See Northlake Community Hospital v. United States, 654 F.2d 1234, 1240 (7th Cir. 1981).
 
 
 44
 With respect to the constitutional issues raised by appellants in the district court brief and in this court, I would affirm the dismissal of the action on the ground that the constitutional contentions are so insubstantial as to fail to rise to a level sufficient to vest the district court with jurisdiction.
 
 
 45
 In Schweiker v. McClure, supra, --- U.S. at ----, 102 S.Ct. at 1671-72, the Supreme Court held that the denial of judicial review of Part B claims does not violate the right of claimants to due process of law.
 
 
 46
 With respect to the equal protection contention, I would hold that the Congressional authorization of judicial review of Part A claims and denial of judicial review of Part B claims is "rationally based and free from invidious discrimination," and is, therefore, not violative of the rights of appellants under the "equal protection component" of the due process clause of the Fifth Amendment. Richardson v. Belcher, 404 U.S. 78, 81, 92 S.Ct. 254, 257, 30 L.Ed.2d 231 (1971). See also Califano v. Aznavorian, 439 U.S. 170, 174-75, 178, 99 S.Ct. 471, 473-74, 475, 58 L.Ed.2d 435 (1978); Weinberger v. Salfi, 422 U.S. 749, 767-85, 95 S.Ct. 2457, 2467-76, 45 L.Ed.2d 522 (1975).
 
 
 47
 Further, I do not see any necessity for the majority's extended discussion of the decision of this court in Chelsea Community Hospital v. Michigan Blue Cross, 630 F.2d 1131 (6th Cir. 1980). Much of the discussion focuses upon language in Chelsea in which this court stated that there are "grave constitutional doubts" about whether the Secretary could be given "unreviewable discretion in reimbursing Medicare providers, particularly if this discretionary authority was delegable to private parties." Chelsea, supra, 630 F.2d at 1135. The recent decisions of the Supreme Court in Erika, supra, --- U.S. ----, 102 S.Ct. 1650, 72 L.Ed.2d 12, and Schweiker v. McClure, supra, --- U.S. ----, 102 S.Ct. 1665, 72 L.Ed.2d 1, appear to dispose of this issue.
 
 
 48
 For these reasons I agree that the judgment of the district court dismissing the action should be affirmed.
 
 
 
 [1]
 The plaintiffs rely upon language in 42 U.S.C. § 1395ff which has been amended. On page 8 of their brief, the plaintiffs quote the language of § 1395ff(b) as follows:
 "Any individual dissatisfied with any determination under subsection (a) of this section as to entitlement under Part A or Part B, or as to amount of benefits under Part A where the matter in controversy is $100 or more, shall be entitled to a hearing thereon by the Secretary to the same extent as is provided in section 405(b) of this title, and, in the case of a determination as to entitlement or as to amount of benefits where the amount in controversy is $1,000 or more, to judicial review of the Secretary's final decision after such hearing as provided in section 405(g) of this title."
 Section 1395ff(b), however, was amended by the Social Security Amendments of 1972, Pub.L.No.92-603, § 299(O)(a), 86 Stat. 1464 (1972). Section 1395ff(b) now provides:
 (b)(1) Any individual dissatisfied with any determination under subsection (a) as to-
 (A) whether he meets the conditions of section 226 of this Act (42 U.S.C. § 426) or section 103 of the Social Security Amendments of 1965 (42 U.S.C. § 426a), or
 (B) whether he is eligible to enroll and has enrolled pursuant to the provisions of Part B of this title, or section 1818 (42 U.S.C. § 1395i-2), or section 1819, or
 (C) the amount of benefits under part A (including a determination where such amount is determined to be zero) shall be entitled to a hearing thereon by the Secretary to the same extent as is provided in section 205(b) (42 U.S.C. § 405(b)) and to judicial review of the Secretary's final decision after such hearing as is provided in section 205(g) (42 U.S.C. § 405(g)) (2) Notwithstanding the provisions of subparagraph (C) of paragraph (1) of this subsection, a hearing shall not be available to an individual by reason of such subparagraph (C) if the amount in controversy is less than $100; nor shall judicial review be available to an individual by reason of such subparagraph (C) if the amount in controversy is less than $1,000.
 
 
 [2]
 See note 1
 
 
 [3]
 At the time the plaintiffs filed this action, 28 U.S.C. § 1331(a) provided as follows:
 (a) The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $10,000, exclusive of interests and costs, and arises under the Constitution, laws, or treaties of the United States, except that no such sum or value shall be required in any such action brought against the United States, any agency thereof, or any officer or employee thereof in his official capacity.
 
 
 [4]
 Section 205(g) of the Social Security Act is incorporated into the Medicare Act for three types of disputes: 1) whether an individual meets the conditions of 42 U.S.C. § 426 or 42 U.S.C. § 426a, 2) whether an individual is eligible to enroll and has enrolled pursuant to Part B or 42 U.S.C. § 1395i-2 or section 1819 of the Medicare Act; or 3) the amount of benefits payable under Part A. See 42 U.S.C. §§ 1395ff(b)(1)(A), (B) and (C)
 
 
 [5]
 The plaintiffs' complaint alleged that the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 703 and 706; the federal mandamus provision 28 U.S.C. § 1361, and the Declaratory Judgment Act, 28 U.S.C. § 2201 and 2202, provided the district court with subject matter jurisdiction. The plaintiffs have not raised these arguments on appeal. Nevertheless, we will address each argument briefly because a jurisdictional question is involved
 First, it is well-settled that the APA is not an independent basis for jurisdiction. Califano v. Sanders, 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977); Chelsea Community Hospital v. Michigan Blue Cross, 630 F.2d 1131, 1133 (6th Cir. 1980). Therefore, the APA cannot be a basis for subject matter jurisdiction.
 Second, 28 U.S.C. § 1361 provides that "(t)he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer ... of the United States ... to perform a duty owed to the plaintiff." We conclude that the extraordinary writ of mandamus is inappropriate in this case. The Secretary does not have a clearly defined duty to pay the plaintiffs' claims under Part B. See Cervoni v. Secretary of Health, Education and Welfare, 581 F.2d 1010, 1020 (1st Cir. 1977). Moreover, there has been no showing that the Secretary refused to act on claims presented to him. Hopewell Nursing Home, Inc. v. Schweiker, 666 F.2d 34, 42 (4th Cir. 1981). Accordingly, we conclude that the mandamus statute does not provide jurisdiction in this case.
 Finally, it is well-settled that the Declaratory Judgment Act cannot be an independent basis for jurisdiction. Rather, the Declaratory Judgment Act is discretionary ancillary relief. Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 70 S.Ct. 876, 94 L.Ed. 1194 (1950); Aetna Life Insurance Company of Hartford v. Haworth, 300 U.S. 227, 57 S.Ct. 461, 81 L.Ed. 617 (1937). See Wright, Handbook of the Law of Federal Courts, § 18 at 71 (3rd ed. 1976); see also Public Service Commission of Utah v. Wycoff, 344 U.S. 237, 73 S.Ct. 236, 97 L.Ed. 291 (1952).
 Accordingly, neither the APA, the federal mandamus provision, nor the Declaratory Judgment Act provide the district court with subject matter jurisdiction here.